THE STATE v. CHARLES E. CROSS and SAMUEL C. WHITE.

*Forgery—False Entries—Jurisdiction—National Banks—Evidence—Intent—Former Conviction and Acquittal—Polling Jury—Verdict—Merger of Offences—Nol. Pros.*

1. When an offence is a necessary element and constitutes an essential part of another offence, and both are in fact one transaction, a conviction or acquittal of one is a bar to the prosecution of the other.

2. While it may be the Courts of the United States have exclusive jurisdiction to try and punish the offence of making false entries in the books, &c., of national banking associations, as provided in Rev. Stat. (U. S.), § 5209, it does not follow that, because such entries may have been based upon acts which constitute an independent and distinct offence against the laws of a State, the jurisdiction of the Courts of the latter is thereby ousted.

3. Therefore, where it appeared that the defendant, an officer of a national bank, forged certain bonds, &c., with the purpose only to deceive the Bank Examiners of the United States, and entered them upon the books of the bank as genuine: *Held,* that the State Courts had jurisdiction of the *forgery.*

4. Section 5418, Rev. Stat. U. S., providing for the punishment of those who shall forge or counterfeit "any bond * * * or other writing for the purpose of defrauding the United States," is confined to frauds attempted to be perpetrated against the Government, and does not embrace securities held by banks or individuals against other business corporations or individuals; nor does it extend to forgeries made with the intent to deceive a Federal Bank Examiner, where it does not appear that the Federal Government has any pecuniary interest in the matter.

5. Upon the trial of an indictment for forgery against the president and cashier of a bank, wherein it was charged the defendants forged and uttered certain bonds and deposited them as assets of the bank: *Held,* that evidence of the ownership of the stock of the bank and its financial condition at and prior to the time of the alleged forgeries was incompetent, the only inquiry being as to the perpetration of the forgery and the intent to defraud; and that it was unnecessary to allege or prove that any particular person was defrauded.

6. If a forgery is committed with a present *intent* to defraud, the offence is complete, whether it is successfully consummated or not; and it is not essential that any advantage was anticipated to accrue to the person charged.

7. Where the paper-writing alleged to be forged is such in appearance that it may, from its nature, or in the course of business, deceive another person, the offence of forgery is complete.

8. Where the alleged forged instrument has the names of two or more persons affixed, it is sufficient if one of them is proved to have been forged.

9. Where, upon the trial of an indictment containing four counts, the jury, after considerable time devoted to deliberation, announced they could not agree, and upon being polled so stated, whereupon the Court further polled them by asking each juror what was his verdict, and it thereby appeared that the jury were agreed upon two counts, but could not agree upon the others, and the jury having again retired the Solicitor entered a *nol. pros.* as to the two counts upon which the jury were disagreed, and thereupon a verdict of guilty was rendered as to the others : *Held,* that while this method of polling the jury was not to be approved, inasmuch as no injury could result to the defendant the verdict should be allowed to stand—the *nol. pros.* being, in effect, an acquittal of those counts.

This was an INDICTMENT for forgery, tried before *Avery, J.,* at July Term, 1888, of WAKE Superior Court.

The defendants, Charles E. Cross and Samuel C. White, in an indictment found by the grand jury of the Superior Court of the county of Wake, are charged as follows :

"The jurors for the State, upon their oath, present: That Charles E. Cross and Samuel C. White, both late of the county of Wake and State aforesaid, on the 8th day of March, in the year of our Lord one thousand eight hundred and eighty-eight, and within the jurisdiction of this Court, at and in the county aforesaid, unlawfully and feloniously of their own head and imagination, did wittingly and falsely make, forge and counterfeit, and then and there wittingly assent to the falsely making, forging and counterfeiting, a certain promissory note for the payment of money, which said forged promissory note is of the tenor following, that is to say

$6,250.00.                                    MARCH 8, 1888.

Four months after date we, D. H. Graves, principal, and W. H. Sanders, the other subscribers, sureties, promise to pay the State National Bank of Raleigh, North Carolina, or order, sixty-two hundred and fifty dollars, negotiable and payable at State National Bank of Raleigh, N. C., with interest at the rate of eight per cent. per annum after maturity until paid, for value received, being for money borrowed; the said sureties hereby agreeing to continue and remain bound for payment of this note and interest, notwithstanding any extension of time granted from time to time to the principal debtor, waiving all notice of such extension of time from either payor or payee ; and I do hereby appoint Sam. C. White, cashier, my true and lawful attorney to sell any or all collateral he may have in his hands to pay this claim if I should fail to do so when said claim falls due, after giving me ten days' notice of his intention to sell the same, and pay any surplus that may remain to me.

D. H. GRAVES,<br>W. H. SANDERS.

And upon the back of which said false, forged and counterfeit promissory note is stamped and written—D. D.

D. H. GRAVES.<br>$6,250—July 8.

With intent to defraud, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The second count charges the defendants with feloniously and wittingly uttering and publishing as true a certain false, forged and counterfeited promissory note for the payment of money, setting it out in the same descriptive words as in the first count, " with intent to defraud," adding, "they, the

said Charles E. Cross and Samuel C. White, at the time they so uttered and published the said false, forged and counterfeit note, then and there well knowing the same to be false, forged and counterfeited, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The third is in all respects similar to the first count charging the forgery, except that it concludes thus: " With intent to defraud then and there the State National Bank, a corporation then and there duly created and existing under the laws of the United States, contrary," &c., as before.

The fourth count charges a conspiracy with others to defraud the same bank by making, forging and counterfeiting and uttering such promissory note, " with intent to defraud," contrary, &c., as in the other count.

At their arraignment for trial at the July Term of said Superior Court the defendants put in a plea in abatement to the jurisdiction of the Court, which is in these words :

" And the said Charles E. Cross and Samuel C. White, in their own proper persons, come into Court here, and, having heard the indictment in the above entitled case read; do say :

That the said Court here ought not to take cognizance of the conspiracy and conspiracies, forgery and forgeries, uttering and utterings in the said indictment specified, because :

Protesting each for himself that he is not guilty of the same, as so averred, nevertheless the said Charles E. Cross and Samuel C. White, each severally says :

That at the time of the alleged conspiracy and conspiracies, forgery and forgeries, uttering and utterings, in said indictment specified, there was a national banking association duly organized and acting under the laws of the United States in Raleigh, Wake County, North Carolina, known as the State National Bank of Raleigh, North Carolina, having its place of business and doing its said business in the said

city of Raleigh, in the county of Wake and State of North Carolina, and within the jurisdiction of the Circuit Court of the United States for the Eastern District of North Carolina.

That the said Charles E. Cross was then and there an officer of said bank, to-wit, its president, and the said Samuel C. White was then and there an officer of said bank, to-wit, its cashier.

That said alleged conspiracy and conspiracies, forgery and forgeries, uttering and utterings, were made, entered into, committed and done by the said Charles E. Cross, and afterwards assented to by the said Samuel C. White, for the purpose of supporting, sustaining and making a certain false entry and entries in the books of said bank, and that the said false entry and entries were by the said Samuel C. White, cashier, as aforesaid, acting as cashier, actually made in and upon the books of said bank, the said Charles E. Cross being then and there aiding and abetting, for the purpose of deceiving and with the intent to deceive the agent of the United States, to-wit, the bank examiner of the United States, duly appointed to examine into the affairs of the said association, to-wit, the State National Bank of Raleigh, North Carolina.

That the said note in said indictment specified was never uttered or published in any way nor to any other person or corporation, nor was there any intent or attempt to do so. That the said note in the said indictment specified was entered upon and in the books of the State National Bank aforesaid as the property of the said the State National Bank of Raleigh, North Carolina, and placed among the assets by the said Charles E. Cross and Samuel C. White as aforesaid, for the purpose and with the intent aforesaid.

The above facts the said Charles E. Cross and Samuel C. White are ready to verify.

Whereupon, they pray judgment of the said Court now here, will or ought to take cognizance of this indictment

here preferred against them, and that by the Court here they may be dismissed and discharged, &c.

   (Signed)   C. E. CROSS,
        SAMUEL C. WHITE."

The plea is verified by their several oaths, and thereupon the Solicitor, T. M. Argo, prosecuting for the State, entered a demurrer to said plea, which demurrer, upon argument, was sustained, and the defendants' motion to dismiss the action was denied, and an appeal from the ruling at this stage of the proceeding refused, to all which ruling defendants excepted.

The defendants then each and severally pleaded not guilty of the charges contained in the indictment.

Upon the issue thus joined upon the evidence, after argument and the charge of the Court, the jury returned a verdict of guilty as to both defendants upon the two first counts of the indictment, and judgment being pronounced thereon, the defendants appealed to this Court, assigning various errors to the rulings of the Court during the progress of the trial.

The other facts necessary to an understanding of the questions decided are stated in the opinion.

*The Attorney General* and *Mr. John Devereux, Jr.,* for the State.

*Messrs. Walter R. Henry, T. C. Fuller, E. C. Smith* and *Geo. H. Snow,* for the defendants.

SMITH, C. J. (after stating the case.) The first exception is to the action of the Court in sustaining the demurrer and disallowing the plea to the jurisdiction of the Court.

It is insisted in the carefully prepared brief for the accused laid before us, with an oral argument in its support and a large array of adjudications and other authorities, that (and

we copy the words of the contention) " the State Court has no jurisdiction over the case at bar. The false entries on the books of the State National Bank of Raleigh, N. C., *are so false* because based upon the forged notes. If the notes are not forged, the entries are not false. To determine the falsity of said entries, the Federal Court has exclusive jurisdiction. If the State Court be conceded jurisdiction to try the defendants for said forgeries, the Federal Court cannot afterwards try the defendants for the false entries, the forgeries being integral and essential elements in the false entries. The Federal Court having exclusive jurisdiction to determine the falsity of the entries and to punish the makers thereof, it follows that jurisdiction to try the defendants for said forgeries cannot be conceded to the State Court."

The argument proceeds upon the assumption that the forgery, a misdemeanor of high grade under the laws of the State, being the means by which the false entries are made, and by reference to which the falsity is determined, is so associated with the entries and so merges in them as a constituent element in the offence constituted and punished under the act of Congress as to oust the jurisdiction of the State Court to try and punish the forgery as a distinct and separate crime. We shall not question the correctness of the proposition which places the offence of making the false entry on the books of the bank under the sole cognizance of the Courts of the United States, and denies jurisdiction to the Courts of the State, but we are unable to agree with counsel that this takes from the latter Courts the right to try and punish for the distinct and independent crime made such by the laws of the State, notwithstanding the forged note was the instrument employed to give a false coloring to the entry and deceive one examining into the financial condition of the bank. If the note was genuine, but deposited in the bank with the understanding that it was to be surrendered to the makers, or cancelled, as soon as the illegal purpose was

accomplished, or if the entry showed a larger sum than was really due, ignoring the credits to which it was subject, and this was knowingly done with the same illegal intent, or if it had been made without the apparent support of any such paper of value, the entry would be false and deceptive, and become a criminal offence under the act of Congress.

The forgery is not, then, a constituent part of the criminal act of making a false entry, though in the present case preceding the latter in time, and comprehended in the general purpose formed to defraud, and furnishing strong evidence of the unlawful intent in making the entries, and thus misrepresenting the resources and condition of the association when undergoing official examination.

Let us suppose the crime of forgery were a capital felony, or an offence punished with great severity. and the making the false entry one of much milder grade, would the fact that the latter is cognizable in the Federal Courts, even when, as in this case, no jurisdiction has attached, deprive the State of its right to pursue and punish the offender for the infraction of its own laws in the committing of the higher crime? The question supplies its own answer; and as forgery and making a false entry are distinct and separate crimes, the jurisdiction assumed over the one offence against the State law is entirely consistent with the exercise of a like jurisdiction over the other offence, made such by the act of Congress.

The numerous references made in the brief of defendants' counsel do not conflict with the foregoing view of the law applicable to the facts of the case that we have taken, as upon an examination will appear. The authorities are cited in the brief at page 14, and those most favorable to the view taken for the defendants we propose to examine. It will be seen that none of them refer to distinct and conflicting jurisdictions, but to cases under a single jurisdiction.

In *State* v. *Shepard*, 7 Conn., 54, it was decided that a conviction of an attempt to commit a rape under an indictment so charging, was proper when the proof showed the rape was accomplished, and such conviction was a bar to another indictment preferred for the rape. And so it is held in *State* v. *Smith*, 43 Verm., 324, and the general principle is laid down that when an offence is a *necessary element in and constitutes an essential part of another offence, and both are in fact but one transaction*, a conviction or acquittal of one is a bar to a prosecution to the other.

In *Drake* v. *State*, 60 Ala., 43, which was an indictment for an assault with intent to murder, and under it a conviction of an assult and battery, without a weapon, a *nolle prosequi* having been entered as to the felony charged, is not a bar to the charge of an assault and battery with a weapon, when, with leave of the Court, the defendant withdraws that plea and pleads guilty, and he cannot complain thereof. The Court say, in general terms, that a single criminal act cannot be split up into two or more distinct indictable offences and prosecuted as such.

In *State* v. *Cooper*, 1 Green, (N. J.) the prisoner was indicted as principal, with two others as accessories, for the wilful and malicious burning of a dwelling house, and at the same time charged in another indictment, then found, with arson, in burning the same dwelling house, and by means thereof mortally burning and killing one Joseph Hopper, who was in said dwelling. On the trial of the charge of arson the defendant was found guilty. The indictment for murder was then moved; thereupon the prisoner interposed the defence of a conviction of the offence of arson.

The Court sustained the plea, declaring that the killing being unintentional and a simple consequence of the burning, the conviction for the burning was a bar to the second indictment, charging a homicide as an accidental but not intended

assault, and that the offences were so essentially one that the prisoner could not be punished for the second imputed crime.

In the case of *State* v. *Chappen*, 2 Swann, 493, it is held that after a fine imposed for an assault, a person could not be indicted for an assault and battery, there being but a single act.

In *State* v. *Shelly*, 11 Lea., 594, it was held that a person swearing falsely in a case pending before a United States Commissioner, exercising his functions as such judicially, could not be tried for the perjury then committed before the tribunal of a State, the jurisdiction vested in the Federal Courts being exclusive.

The same conclusion is reached and announced in *State* v. *Pike*, 15 N. H., 83.

The principle is extended and applied to actions for a penalty given by an act of Congress in reference to license for retailing spirituous liquors, in *United States* v. *Lathrop*, 17 Johnson, 4.

We now proceed to consider the cases referred to in our own reports.

In *State* v. *Ingles*, 2 Hay., 4 (148), the indictment for a riot and for beating and imprisoning one Barry, was resisted upon the plea of a former conviction for an assault and battery grounded on the same fact. The Court say that " the State cannot divide an offence consisting of several trespasses into as many indictments as there are acts of trespass that would separately support an indictment, and afterwards indict for the offence compounded of them all," and so the plea was held good.

In *State* v. *Lewis* (a slave), 2 Hawks, 98, two bills of indictment were found against the prisoner at the same time—one for burglary and larceny, the other for robbery—and both charged the felonious taking of the same goods. On the first the prisoner was convicted of the larceny only. It was ruled

that he could not be tried on the second indictment, because it would be twice putting him in jeopardy for the same crime.

In *State* v. *Commissioners of Fayetteville*, 2 Murph., 371, the defendants were tried and convicted for not keeping one of the streets in the town of Fayetteville in repair, and there were three other streets in the same condition, for the neglect to repair which three other separate indictments had been found, the conviction was relied on as a bar to the other indictments, and the plea was sustained. " It would be monstrous," says the Court, " to charge them with separate indictments for every street in the town, when the whole were out of repair at the same time, especially when upon one indictment a fine can be imposed adequate to the real estimate of the offence." The imputation is of negligence as the distinctive offence, though shown as appl able to different streets, just as an overseer is guilty of but ne offence in neglecting to keep his road in repair as ₁ ₁vhole, and not as many offences as there *are parts* of it out ᴜ. repair and needing amendment.

So, if a person has been tried for an affray, he cannot again be prosecuted for an assault and battery committed in making the affray. *State* v. *Stanly*, 4 Jo., 290. And similar ruling was made when the assault was made in a riot and given in evidence to prove the riot in an indictment for the latter offence.

None of these cases to which our attention has been given go beyond these adjudications, and they clearly recognize the distinction which we have drawn in examining the case before us, where the offences are not only cognizable in different tribunals, but distinct and independent themselves, of either one of which a party may be guilty, and not guilty of the other. The principle is not affected by the fact that the spurious character of the note may supply forcible if not

invincible evidence of the *mala fides* and fraudulent purpose of the act of the making the false entry.

It is furthermore insisted that the forgery of the note, as a substantive crime, made, as alleged, to defraud the United States, can be prosecuted only in the Courts of the United States under § 5418 of the Revised Statutes of the United States. The enactment is in these words: " Every person who falsely makes, alters, forges, or counterfeits any bid, proposal, guarantee, official bond, public record, affidavit, *or other writing*, for the purpose of defrauding the United States, or utters or publishes as true any such false, forged, altered or counterfeited bid, proposal, guarantee, official bond, public record, affidavit, *or other writing*, for such purpose, knowing the same to be false, forged, altered, or counterfeited, or transmits to or presents at the office of any officer of the United States any such false, forged, altered or counterfeited bid, proposal, guarantee, official bond, public record, affidavit, or other writing, knowing the same to be false, forged, altered or counterfeited for such purpose, shall be imprisoned at hard labor for a period not more than ten years, or be fined not more than one thousand dollars, or be punished by both such fine and imprisonment."

Very similar in terms is § 5479, in the same chapter 5 of title 70, entitled " Crimes against the operations of the Government."

From the entire context and the carefully constructed sentence or section itself, it is manifestly directed against frauds attempted to be perpetrated on the Government in its fiscal operations, as the entire chapter shows. The section nowhere mentions promissory notes or money securities held by banks or individuals against other business corporations or individuals, and the careful enumeration of the things to be forged, and the leaving out bills and notes, in which are formed relations between the debtor and payee or holder, are significant of the scope and limitations of the enactment.

The expression, " or other writing," following the enumeration must find a restriction in the class to which it belongs, and the obvious scope of the operation of the section as an entirety. It does not include in our interpretation of the clause, " for the purpose of defrauding the United States," a commissioner sent to look into and report the condition of the bank, when it does not appear that the government has any pecuniary interest in the matter and is only exercising, through this agency,, a supervisory power over these institutions to secure their fidelity to duty· and the safety of the public.

But if it be conceded that such a promissory note is embraced, it is only such as are forged or counterfeited to defraud the United States, and an averment to that effect is necessary to withdraw such forgeries from the general jurisdiction of State Courts. Such notes alone are transferred to the jurisdiction of the Federal Courts, leaving all others, where such intent does not enter into the criminal act, to the judicial· tribunals of the State. The absence of this indispensable prerequisite in any averment contained in the plea in abatement precludes the defendants from insisting that the forgery does not belong to the jurisdiction of the State, for it is not all forged notes that can only belong to and be tried in the Federal Court, but such as are made for the unlawful purpose specified in the statute, and therefore, the plea does not show an excluding jurisdiction and take away that of the Court. See *Coleman* v. *Tennessee*, 97 U. S. Rep., 509.

The exceptions numbered from 8 to 24 inclusive are taken to the refusal of the Court to permit evidence proposed to be given, that the stock of the bank belonged to the family of the late John G. Williams, its founder, and to one of whose daughters the defendant Cross was married, while the defendant White was the brother of the widow of the deceased, and offered to repel the charge of an intent to

defraud the bank; and further, as to the previous condition of the bank under the management of former presidents.

We think the testimony was properly rejected. The simple inquiry was as to the alleged forgery of the note set out in the indictment and the fraudulent purpose for which it was intended to be used and was in fact used in covering up the real condition of the institution and supplying spurious in place of its wasted resources. To this end the forgery was committed as a method of effectuating the purpose, and placed as if genuine among the assets. This use of the paper involves the intent to defraud some one, and under our statute (*The Code*, § 1191), a general charge of an intent to defraud without designating the person or corporation intended to be defrauded is sufficient.

The intent to defraud is involved in the making and using the forged instrument as if genuine, and this purpose is not repelled by the existence of family relations among the parties, nor does the evidence tend to disprove the presence of the fraudulent intent in the act to which it is an inseparable incident. Whatever misconduct of others, previously entrusted with its management, may have led to the disastrous condition in which, in assuming the presidency, the defendant Cross found it, no defence nor extenuation in law is afforded by its necessities for the criminal act committed, and inquiries in that direction were wholly out of place in this prosecution.

Again, other notes, alleged to be spurious and found among the assets of the bank, the State proposed to prove in support of the charge of conspiracy and to show the *scienter*, and, after objection, was allowed to do so.

For this purpose only it was competent, and for this purpose alone the proof was admitted. But it became immaterial, inasmuch as no conviction was had upon the charges it was offered to support.    *    *    *    *

We dispose of the other exceptions relating to the evidence with the single remark that they are equally untenable as the others, and we next proceed to examine the instructions which were tendered and refused, as also such as were addressed to the jury, so far as they are not embraced in what has been already said.

The first three refused instructions are of the class referred to in the preceding remark as having in their import been before examined.

The fourth relates to the charge of conspiracy, which is put out of the way by the verdict.

The fifth asserts, as a proposition of law, that if the note was forged not for the benefit of the defendants, nor was any money obtained thereon, but merely to create a false idea of the condition and solvency of the bank, and the jury so believe, the defendants are not guilty.

5. The proposition is an erroneous statement of the law, for if the forgery was committed with a *present intent* to defraud, the offence was complete, whether the expected advantage was to accrue from it to the defendants personally or to another, and whether the purpose was successfully attained or they failed in it.

6. The sixth instruction is substantially the same as must be our ruling upon it.

7. The Court properly declined to tell the jury that the finding the note among the assets of the bank, after the departure of the defendants, was not a finding that the defendants had had possession, and warranted no inference that the defendants knew of, were guilty of, or were in any way connected with the making of the note.

The tenor of the evidence did not authorize the giving any such direction, and the jury were to draw their conclusions, not from one isolated fact, but from all that was shown.

9. If there was not such resemblance between the genuine and spurious handwriting of Graves and Sanders appearing

in the note as would deceive a man of ordinary intelligence and caution, and for want of similarity in the signatures the forged note " did not have any legal adaptation to accomplish a legal wrong, the person could not be convicted."

This proposition would excuse an act of forgery in every case, even when the fraud had been consummated when the person upon whom it was practiced was unacquainted with the handwriting of one whose signature it purported to be and who reposed confidence in the genuineness of the paper. The variation in the writing may be evidence of the absence of an intent to defraud, but not when the intent has been developed in the act of defrauding. It was in this case made payable to the bank and put in possession of the bank, and there left when its doors were closed as part of its resources. Besides, the variance was not so marked as to call for such a direction, nor does it find support in the case of *State* v. *Covington*, 94 N. C., 913. Precisely such an instruction was declined in that case in words almost identical and the ruling affirmed on appeal; Merrimon, J., speaking for the Court, in the conclusion of his remarks upon this point thus: " If, therefore, the false and fraudulent paper-writing be such that it might, from its nature and the course of business deceive or mislead to the prejudice of another person, the offence of forgery would be complete."

The remaining instruction refused was that if only one of the names signed to the notes is shown to be forged and the evidence not satisfactory of the forgery of the other, there is a fatal variance, and the verdict must be for the defendants.

The contrary has been expressly decided in the cases of *State* v. *Gardiner*, 1 Ired., 27, and *State* v. *Davis*, 69 N. C., 313, and we are content with the mere reference to them.

It will conduce to a more correct understanding of these exceptions and the rulings upon them to reproduce so much

101—50

of the charge delivered in place of that asked and refused as relates to the same subject matter, and which is also excepted to in detail.

After explaining the separate charges made in the several counts of the indictment and defining the offence of forgery, the Court says :

" If the jury should be satisfied, beyond a reasonable doubt, from the testimony that either of the defendants forged or altered the note set forth in the bill of indictment with intent to defraud any individual or corporation whatever, then such defendant would be guilty as charged in the first count of the bill of indictment.

If the jury should be satisfied in the same way, beyond a reasonable doubt, that either of the defendants aided or abetted another in falsely forging or altering said note, or assented to the false forging or altering said note after it had been forged by another, with intent to defraud any person or corporation whatever, such defendant would be guilty, in manner and form, as charged in the first count.

If the jury are satisfied beyond a reasonable doubt that either of the defendants did utter and publish said note; knowing it to have been forged or altered with intent to defraud any person or corporation whatever, then such defendant would be guilty as charged in the second count.

If the signature of the name of D. H. Graves to the note did not resemble his own proper signature, that is a circumstance that the jury may consider in determining whether there was an intent on the part of either of the defendants to defraud said Graves. But if his name was written by either of the defendants to said note for the purpose of defrauding any person, or if either of the defendants assented to the writing of such name by another than Graves with said intent, then such defendant would be guilty, whether the signature bore such resemblance to that of said Graves as would probably deceive any person acquainted with his

handwriting as to the genuineness or not. The rule in reference to the adaptation to deceive in such cases applies only to counterfeit money, or currency, or coin."

We find nothing in this series of directions of which the defendants can justly complain, and what has been already said disposes of these exceptions also. But if there was an erroneous statement of the law in one particular, while it was correctly laid down in other parts of the single instruction, it would be unavailing according to our own and the rulings in the U. S. Supreme Court. *Bost* v. *Bost*, 87 N. C., 477; *Williams* v. *Johnston*, 94 N. C., 633; *Johnson* v. *Jones*, 1 Black., 209; *Lincoln* v. *Claflin*, 7 Wall., 132.

We have omitted to advert to the charge in so far as it refers to the second and third counts, for the reason that no verdict was demanded or rendered on them, as will hereafter appear, and no harm has come to the defendants in consequence.

The last and remaining objection disclosed in the record has reference to what transpired at the rendition of the verdict. The facts are these:

The jurors having retired to consult upon their verdict, sent a message through the officer put in charge of them, signed by one of their number, to the effect that it was impossible for them to agree, and this juror stating that he had been suffering for a day or more with sick headache caused by indigestion, and did not feel able to continue longer. The jurors were thereupon brought before the Court by order of the Judge, and the Court, in the exercise of its discretion, in the presence of the defendants, proceeded to poll the jury, to the doing of which the defendants excepted. In polling the jury, the Judge first inquired of the whole body whether they could agree, and the foreman answered that they could not. Then each juror, as his name was called, was asked, " What say you—are the defendants, or either of them, guilty in the manner and form as charged in the bill of indictment,

or not guilty?" To this exception was also taken. When the process of making the separate inquiry of each was concluded, it appeared from the answers that all the jurors were, agreed upon a verdict of guilty against both defendants upon the first and second counts, while two of the number were for finding them not guilty upon the third and fourth counts. The Solicitor thereupon proposed, in presence of the jury, to enter a *nolle prosequi* to those counts. The jury withdrew, and, after argument from the Solicitor, he was authorized to make the entry. Upon the return of the jury to the court-room, they were informed by the Judge of the allowance of the entry, and that they need only pass upon the charges contained in the first and second counts. After again retiring, they returned in charge of the officer into Court, and for their verdict say the defendants are guilty. The jury was again polled, at the instance of the defendants' counsel, and asked, each juror, as to the verdict, and each responded, "Guilty." Exceptions were made to each step taken in the action of the Court; and further, that the verdict, though so ordered by the Court, was a general and not a special verdict. The Court finds, as a fact, that the jury were not ordered to find a special verdict. While we do not approve of the mode adopted to ascertain the individual opinion of each juror before an agreement has been reached by the entire body, even to ascertain whether there are insurmountable difficulties in the way of arriving at unanimity and they should be discharged, a discretionary power rested in the Judge, because of its possible injurious effect upon the minds of the dissenting jurors, there is no error in law committed, and it is apparent no injury has come to the defendants by eliminating so much of the charge as was abandoned by the Solicitor. He had no right to enter a *nolle prosequi* in its strict legal sense, which, like a non-suit in a civil action, would leave the defendants exposed to another prosecution

for the same offence.   The action of the Solicitor is miscalled, but in legal effect it was a consent to ·an acquittal of the accusations in the specified counts, and such is the result of a failure to render a verdict upon some of several counts in an indictment.   *State* v. *Taylor,* 84 N. C., 773; *State* v. *McNeill,* 93 N. C., 552; *State* v. *Bowers,* 94 N. C., 910; *State* v. *Thompson,* 95 N. C., 596.

The last case shows also that a general verdict may be construed in the light of instructions given by the Judge, and though general in terms will, in legal effect, be restricted to such alone of the counts as the jury were directed to pass on, a ruling sanctioned in the case of *State* v. *Long,* 7 Jones, 24, and *State* v. *Leak,* 80 N. C., 403.

The questioning of the jury revealed the fact of an entire unanimity upon the first two charges, the result of their deliberation before coming into Court, and a readiness to render a verdict accordingly.   The abandonment of the others for the purpose of ending the cause was so far favorable to the defendants as to operate as a partial acquittal, and did not, nor could of itself work any injury to them.   *State* v. *John,* 8 Ired., 330.

There was no reviewable error in what transpired, but the granting of a new trial after setting aside the verdict rested in the sound discretion of the presiding Judge, which he has seen fit to exercise in refusing the application for it.   The motions in arrest of judgment for supposed defects in the form of the indictment were properly overruled, for it substantially follows approved and recognized precedent, except so far as modified by statute in reference to the averment of an intent to defraud, which it sanctions without further designation.   We have thus carefully perused the record and examined the numerous exceptions taken during the progress of the trial, pressed with great earnestness in the argument on the appeal, in which a very thorough research,

among the reports and elementary writers has been apparent, and yet our convictions as given in this opinion are clear and strong that the accused have had an impartial trial and the result must stand. There is no error, and the judgment must be and is affirmed.

Affirmed.