*In re* ALIANO.

*In re* VARANA.

*(Circuit Court, S. D. New York.* September 8, 1890.)

----

*In re* CROSS *et al.*

*(District Court, E. D. North Carolina.* June 2, 1890.)

1. EXTRADITION—OBJECTION TO TRIAL—WHEN TO BE TAKEN.
Where an indicted person, who has escaped to Canada, and against whom an extradition warrant has been issued, returns to this country voluntarily, under an agreement that he shall only be tried for the offense for which he has been indicted, and he is thereupon tried and convicted, the objection that the crime for which he was tried was not an extraditable offense must be raised at the trial in order to be available.

2. SAME—HABEAS CORPUS—JURISDICTION OF FEDERAL COURT.
An application for the release of such person on *habeas corpus,* because not tried for an extraditable offense, does not raise any question under the constitution, treaties, or laws of the United States.

3. SAME—FORGERY.
The treaty of 1842, between the United States and Great Britain, which provided for the extradition of persons charged with forgery, allows the extradition from Canada of a fugitive who is charged with an act which was forgery by the laws of Great Britain in 1842.

At Law. Petition for *habeas corpus.*
*W. B. Henry,* for petitioners.

SEYMOUR, J. Charles E. Cross and Samuel C. White file their petition for a writ of *habeas corpus.* It thereby appears that they are confined in the county work-house of Wake county under a judgment pronounced by the superior court of that county upon an indictment charging them with forgery. From the original judgment in their case an appeal

was taken to the supreme court of North Carolina, where it was affirmed, (7 S. E. Rep. 715,) and thence the proceedings were carried by writ of error to the supreme court of the United States, upon the contention that the offense for which defendants were indicted was cognizable only in the federal courts. The supreme court having affirmed the judgment of the supreme court of North Carolina, (132 U. S. 131, 10 Sup. Ct. Rep. 47,) the sentence of the state court is now being carried out against the petitioners. They now allege that their imprisonment is illegal and void, as being in violation of the treaty of 1842 between the United States and Great Britain. The facts upon which it is contended that the treaty has been violated are as follows: In April, 1888, the prisoners, fearing arrest, as they state, "sought and obtained an asylum in the dominion of Canada," whither they were pursued by F. H. Busbee, Esq., the United States attorney for this district, acting in that capacity, and also as agent for the state of North Carolina, and one C. D. Heartt. These two gentlemen carried with them all necessary papers for the extradition of defendants, and caused them to be arrested in Canada. While under arrest defendants entered into an agreement to return to North Carolina, and thereupon the extradition proceedings were abandoned. The agreement is in these words:

"TORONTO, ONTARIO, April 3, 1888.

"*In the Matter of the Extradition of Chas. E. Cross and Sam C. White.* Representing the state of North Carolina in the matter of adjustment pending against Chas. E. Cross and Sam C. White in the superior court of the county of Wake, and as United States attorney for the eastern district of North Carolina, charged with the prosecution of all offenses against the United States in said district, I stipulate and covenant to and with said Cross and White that, if they shall surrender themselves to Charles D. Heartt, the person designated by the president of the United States to receive them under the extradition laws, without any proceeding under the extradition act, and shall, so far as they may be able, aid in the delivery to the special receiver of the State National Bank (F. H. Busbee) of the money brought by them to Canada, and shall return with said Heartt and *posse* to the state of North Carolina, there to be dealt with according to law, I will not institute, or permit to be instituted, in the courts of the United States, any indictment or prosecution for any offense under the national banking laws; and that in behalf of the state there shall be no prosecution instituted against them, or either of them, other than those for which extradition is or was about to be sought, to-wit: (1) An indictment for forging a promissory note for $6,250, (describing it;) (2) an indictment for forging a promissory note for $7,500, (describing it;) (3) an indictment for forging a promissory note for $5,800, (describing it.) That said Cross and White shall be received upon like conditions as if they had been extradited upon these prosecutions, and none other.

"C. E. CROSS.
"SAM C. WHITE.
"F. H. BUSBEE.

"In all capacities."

In pursuance of this agreement defendants returned to the United States, and were tried for forgery, and convicted. The indictment upon which they were tried is annexed to this petition. It was found, at March term, 1888, before extradition proceedings were begun, or the

agreement which was substituted for them was made, and charges the defendants with forging a promissory note for $6,250, purporting to be signed by D. H. Graves and W. H. Sanders, "with intent to defraud, contrary to the form of the statute," etc. Petitioners aver that, under the above-cited agreement, they were entitled to the same immunities that they would have been entitled to had they been regularly extradited, and that had they been regularly extradited they could only have been tried for common-law forgery and uttering; no other kind having been contemplated under the treaty of 1842. They say that they were in fact tried and convicted of a statutory forgery and uttering differing from common-law forgery in proof and degree of punishment, and that therefore they have been tried for a different offense from that for which they might have been extradited. I am of the opinion that it appears from the petition itself that the party is not entitled to the writ. If that be so, the court ought not to grant, as is asked, an order to show cause, but should refuse to make any order other than a denial of the writ. Rev. St. § 755. I do not mean to say that a writ or an order to show cause ought to be issued in no case where the court entertains an opinion adverse to the petitioner. The question may be one of sufficient novelty or importance to justify an argument or notice; but in the matter at bar there is nothing to justify further investigation. I will briefly assign several reasons, any one of which is fatal to the petitioners' right to the writ:

1. The matter is *res adjudicata*. If Cross and White were put upon trial in violation of an agreement between the state's agent and themselves, they should have taken the objection in the superior court of Wake in such a way as to have enabled them to take it to the supreme court, when the record was carried there by the writ of *certiorari*. They cannot be allowed to take their case to the court of last resort in this way.

2. Petitioners were tried in strict conformity to the agreement they produce, upon an indictment pending when the extradition papers were taken out, founded on one of the notes set out in their agreement with Mr. Busbee. If the indictment does not charge an extraditable offense, that objection was open to them in Canada. They consented to come to North Carolina to be tried on this very indictment.

3. The indictment sets forth facts which constitute forgery at common law; but it is not conceived that that is material. Since the recent case of *U. S.* v. *Rauscher*, 119 U. S. 407, 7 Sup. Ct. Rep. 234, it is settled that a defendant who has been extradited has a right to exemption from trial for any other offense than that for which he has been surrendered until he shall have had an opportunity to return to the country from which he had been taken. The treaty of 1842 provides for the delivery, mutually, to and by the respective governments of the United States and Great Britain of all persons charged with the crimes of murder, assault with intent to murder, piracy, arson, robbery, or forgery. Without doubt the treaty contemplated only such acts as were, in 1842, held in the two countries to constitute the offense specified. Forgery is not to be confined to forgery at common law, but includes all acts that were forgery

in England and the United States at the date of the treaty. If since that date any state should have passed a statute giving the name of forgery to some act not so called before,—as, for example, to oral false representations,—such false representations, although designated as forgery, would not constitute an extraditable offense under the treaty. But these defendants were tried for an offense known in 1842 as "forgery" in all English speaking countries. Forgery may be defined at common law to be the fraudulent making or altering of a writing, to the prejudice of another man's right." 4 Bl. Comm. 247. The punishment was fine and imprisonment; and forgery, at the time when the commentator wrote (1765) it, was by statute a capital felony. The statute in force in Great Britain in 1842 was the act of 11 Geo. IV., and 1 Wm. IV. c. 66. Under this statute the forgery of a promissory note, before a capital felony, was made a felony punishable by either transportation or penal imprisonment; so that neither is the mode of trial nor the punishment of the offense charged in the indictment in the case at bar different from what it was either in North Carolina or in England in 1842.

4. No question arises under the constitution, treaties, or laws of the United States, and therefore the federal courts have no jurisdiction. The defendants were not extradited, and therefore could not have been tried in violation of the treaty of 1842. The case of *Ker* v. *Illinois*, 119 U. S. 436, 7 Sup. Ct. Rep. 225, was a stronger one than this, for Ker, who had taken refuge in Peru, had, pending extradition proceedings, been kidnapped in that country, and carried to Illinois for trial. Nevertheless the supreme court held that no case arose under the treaties, laws, or constitution of the United States. Conceding, contrary to the fact, that the state authorities violated the contract between their agent and defendants, there would at most arise either a defense to be interposed by a plea of abatement to the prosecution in Wake county or an action for damages, neither of which matters are relevant to this proceeding.

The conclusion reached, then, is that the defendants have nothing whatever to complain of, since they have been tried in strict conformity to their own agreement; that, if they had ever any cause of objection to the trial in Wake, they lost it by failing to interpose in apt time a plea to the jurisdiction of the case; that no federal question exists, because the defendants were never extradited, but came to North Carolina voluntarily; and, finally, that had the prisoners been extradited, and had they in proper time interposed a plea in abatement on the grounds stated in their petition, the federal courts, although in such case they would have had jurisdiction of the question raised, would yet have been compelled to deny the writ of *habeas corpus*, because it would still have appeared in the petition and accompanying papers that defendants were tried for an offense coming within the terms of the treaty of 1842, and for the very offense set forth in the extradition papers. The motion for a writ of *habeas corpus*, and also the motion for an order to show cause, denied.