## THE STATE v. THEODORE BUENTE, Appellant.

**Division Two, March 24, 1914.**

1. **TWICE IN JEOPARDY:** Court of Criminal Correction. Section
21, page 198, Law 1869, authorizes the judge of the court of
criminal correction of St. Louis, after a defendant has been
put upon trial before a jury therein and evidence heard, upon
an information charging him with assault with intent to kill,
to discharge the jury and to dismiss as to the lesser offense,
if it shall appear that the defendant has been guilty of felony,
and to hold him to answer for the felony in the criminal court,
and thereafter he may be convicted of either the felony or a
misdemeanor only in said criminal court; and said statute is
not void as in conflict with the constitutional provision as to
former jeopardy.

2. ———: Fixed by Constitution. Whatever may have been the
rule at common law by which it was determined when a de-
fendant had been in former jeopardy, the question is now to
be determined by the language of our State Constitution on
the subject, since, whenever the State speaks through either
Constitution or statute, the common law is *pro tanto* supplanted.

3. ——: ——: **Fifth Amendment to U. S. Constitution.** The question of whether a statute violates the Fifth Amendment of the Constitution of the United States is of no concern in determining whether or not defendant has been twice put in jeopardy, since that amendment is no limitation upon the powers of a State, neither does it apply to them.

4. ——: **Constitutional Provision: Rule of Construction.** Wherever the constitution of a State, like the Fifth Amendment to the U. S. Constitution, simply, in words or substance, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," the strict common law rule applies, and whenever the accused has been properly put upon his trial, upon a valid indictment before a competent jury in a court having jurisdiction to hear the cause and to make true deliverance of defendant, jeopardy attaches upon the swearing of the panel of trial jurors; but, where the provision of the constitution is, as it is in Missouri, that "nor shall any person, after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty," a defendant is not put in jeopardy by merely being put on trial before a jury sworn to his deliverance; but a statute which authorizes the judge of the court of criminal correction of St. Louis, when it shall appear that the defendant has committed a felony, to dismiss the lower offense, discharge the jury, and hold defendant to answer to an indictment in the criminal court, and authorizes his trial in said court for either the felony or a misdemeanor, upon an indictment which in every essential feature is a replica of the information filed in the lower court, is not violative of the said constitutional provision, and defendant's plea of said former proceedings in bar of the indictment should be overruled. Under that constitutional provision an acquittal "by a jury" is the condition precedent to the attaching of jeopardy, if the requirements of the statute have been observed.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Kurt Von Reppert* for appellant.

(1) The facts stated and contained in defendant's plea in bar and of former jeopardy stand admitted on the record, for the demurrer of the State admits the

facts therein stated and the inferences to be drawn therefrom. This is axiomatic. (a) That no one shall be twice put in jeopardy for the same offense is a well-established principle of civil law, and is embodied in the very elements of the common law, and is incorporated in the Constitution of the United States and in the Constitution of Missouri. Sec. 23, art. 2, Constitution of 1875; U. S. Constitution, art. 5, Amendments. (b) The term "jeopardy" signifies the danger of conviction and punishment which the defendant in criminal prosecution incurs when a valid indictment has been found and a petit jury is impaneled and sworn to try the case and a true verdict render. State v. Manning, 168 Mo. 427; Cooley's Constitutional Limitations (7th Ed.), ch. 10, pp. 467, 468; State v. Webster, 206 Mo. 571; State v. Snyder, 98 Mo. 555; State v. Wiseback, 139 Mo. 214; State ex rel. v. Williams, 117 Mo. App. 564; 1 Bishop on Criminal Law (6 Ed.), sec. 1043; State v. Hayes, 78 Mo. 605. (c) By the term "same offense" is not signified the same *eo nomine,* but the same act or omission. Commonwealth v. Hart, 149 Mass. 7; Boswell v. State, 111 Ind. 47; State v. Thornton, 37 Mo. 360. (d) That the offense charged in the information dated January 12, 1912, was included and was a necessary element in and constituted an essential part of the indictment herein, and that both are in fact but one and the same transaction, is self-evident. State v. Burke, 89 Mo. 639; 12 Cyc. 259, 260, 261, 280. (e) "The prosecuting attorney may in the first instance file an information charging a person guilty of a less crime than that with which he should have been charged. A person convicted of a less offense cannot again be put upon trial for a greater, where the same facts are required to establish it as in the former case. State v. Hatchen, 136 Mo. 643. (2) The State relied on Sec. 4902, R. S. 1909. (a) Defendant contends that said section is unconstitutional, null and void in its application to the defendant in the case at bar, in

that it is clearly in violation of section 23, article 2, of the Constitution of Missouri, in that it permits and a-lows this defendant to be again or twice put in jeopardy of life or liberty for the same offense. (b) It is likewise in violation of article 5 of the Amendments to the Constitution of the United States in its application to the defendant in the case at bar, in that it permits and authorizes this defendant to be twice put in jeopardy of life and limb for the same offense. See cases under point one.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

A plea in bar was filed alleging former jeopardy, in that the defendant had been placed on trial before the St. Louis Court of Criminal Correction on the charge of assault and battery, and after the jury of twelve good and lawful men had been sworn and evidence on the part of the State given, the court discharged the jury and ordered the defendant held for the grand jury to answer the charge of assault with intent to kill, a felony, and the charge filed in the case at bar, in pursuance to the ruling of the court above referred to. The State filed a demurrer to the plea in bar filed as aforesaid, and therefore the facts stated in and embraced in the plea are admitted. State v. Anderson, 186 Mo. 34; 12 Cyc. 368. Article 5 of the Amendments to the Constitution of the United States is not controverted by the ruling of the court in the case at bar for the reason that this amendment of the Federal Constitution applies only to Federal laws and trials and not to State prosecutions. 12 Cyc. 259. In the case of State v. Gustin, 152 Mo. 112, this court has held that a conviction for assault and battery in a mayor's court is not a bar to a prosecution in the circuit court. If the charge of assault and battery, which was the charge under which this defendant was

brought to trial in the Court of Criminal Corrections, was a city charge and not a State charge, the case of State v. Gustin above would apply, for this case holds that the trial on a city charge, although substantially to the same effect, does not bar a subsequent trial on a State charge. State v. Wister, 62 Mo. 592; State v. Muir, 86 Mo. App. 642; State v. Klaumeiser, 213 Mo. 119; State v. Gustin, 152 Mo. 108. However, assuming that the charge of assault and battery, as used in the court of criminal correction of St. Louis, was the same as common assault under Sec. 4484, R. S. 1909, still a conviction for the same would not bar a prosecution for a greater offense such as "felonious assault," "assault with intent to kill" or "murder." However, we wish to call the court's attention to the fact that there had been no conviction before the court of criminal corrections of the city of St. Louis, but the trial had proceeded only so far as the introduction of part of the evidence on the part of the State, or city, as it might be, and the magistrate, within the discretion allowed, discharged the jury and directed that the defendant be indicted for a felony as provided under Sec. 4902, R. S. 1909. Kelly's Criminal Law & Procedure (3 Ed.), sec. 233; State v. Huffman, 136 Mo. 63. Common assault is not the same offense as assault with intent to kill. Perhaps the constituent elements of common assault would appear in the proof of assault with intent to kill, but the constituent elements of assault with intent to kill would not necessarily appear in the proof of a case of common assault. Secs. 4481, 4484, R. S. 1909; Kelly's Criminal Law & Procedure (3 Ed.), secs. 574, 576; Larson v. State, 140 N. W. 176; Cunningham v. State, 80 Ga. 4; State v. Hill, 122 La. 711; State v. Reiff, 14 Wash. 664; State v. Warren, 79 Neb. 526; Com. v. Bubser, 14 Gray, 83; State v. Gillett, 56 Iowa, 459; Com. v. Harris, 8 Gray, 470; Ex parte Burke, 58 Miss. 50. A thorough discussion of the question involved in the case at bar may be found in 44

L. R. A. (N. S.) 617 to 621 in foot notes. In regard to the question of former jeopardy in the case at bar the ruling of the circuit court was proper and deserves the approval of this court.

FARIS, J.—Defendant was prosecuted in the circuit court of the city of St. Louis upon an information charging him with assault with intent to kill, for that, it was averred, he had stabbed one Rosenthal with a knife. Defendant upon his trial was found guilty by a jury of common assault only and his punishment was assessed at six months' imprisonment in the city jail and a fine of one hundred dollars. The case is here upon a constitutional question raised by the defendant in the manner below to be pointed out.

Defendant in a proper and timely way filed in the court *nisi* a plea in bar in which he averred former jeopardy and prayed that for reason thereof he should be finally discharged. In substance, his plea of former jeopardy was based upon the fact that theretofore upon a proper information filed in the St. Louis Court of Criminal Correction by an associate prosecuting attorney of the city of St. Louis he had been charged with assault and battery upon the said Rosenthal; that he pleaded not guilty to the latter charge, and was thereupon, for the misdemeanor aforesaid, placed upon his trial in the court of criminal correction before a jury duly impaneled and sworn and charged with his deliverance; that all of the testimony on the part of the State in the trial of the defendant for the misdemeanor aforesaid was fully heard by the court, and that thereupon, over the objections and against the protest of defendant, the judge of the court of criminal correction discharged the jury and made an order that defendant be held in bail to the grand jury to answer the charge of assault with intent to kill the said Rosenthal. Further it was averred that the two charges were identical, in that they were based upon identical facts and

occurrences. Other facts were set out in the plea in bar with which we need not burden this statement. Suffice it to say that in our view, upon the question of form and contents, the plea in bar was good. The State in the court *nisi* interposed a demurrer to the plea in bar, for that it did not charge facts sufficient to constitute a bar against the trial of defendant. This demurrer was sustained upon the point of law involved in the case, as raised by the demurrer.

Defendant in his plea in bar attacked the constitutionality of section 4902, Revised Statutes 1909, but for the reasons hereinafter stated this question falls out of the case. He also urged that the facts which he averred, and which the demurrer in law admits, of themselves made out an affirmative showing that he had been twice put in jeopardy of life or liberty for the same offense, in violation of the provisions of section 23, article 2, of the Constitution of Missouri. It is upon this constitutional question that we obtain jurisdiction.

Touching the facts shown upon the trial we may say that the testimony was conflicting. Upon the facts occurring at the immediate moment of the stabbing of Rosenthal by defendant there were no eye-witnesses, save and except Rosenthal and defendant himself. Prior to this stabbing there had been a saloon brawl between Rosenthal and defendant, in which, from the contradictory testimony, it is difficult to say who was the aggressor, though Rosenthal seems to have been the victor. After this encounter was over the defendant left the saloon by a rear door and Rosenthal purchased a bottle of beer at the bar. Rosenthal seems only to have drunk a portion of this beer when he also left the saloon by the same door out of which defendant had gone, for the purpose, however, as he avers, of going to a toilet room. In a dark corridor or alleyway back of the saloon and leading to and near the toilet room, Rosenthal was attacked by defendant with

a knife and cut twice; once upon the thumb, and once in the left side, at about the seventh rib. The stab wound in the side was somewhat serious, and though it was prevented, through having struck the rib, from entering the cavity, it was of such seriousness as to entail upon Rosenthal some five weeks' illness and to necessitate his remaining in a hospital for about a week.

Defendant urged self-defense, and while admitting that he had stabbed Rosenthal, he averred that he did so while Rosenthal was attacking him.

There is no point made as to the sufficiency of the evidence, which, after all, upon the contradictions shown by the record, was for the jury and is not for us. Such other facts as may arise in the case and become necessary to be stated in order to make clear the questions of law involved, will be set out in the opinion.

I. The most serious point in this case and that which is most strenuously urged upon us is that of former jeopardy, which learned counsel for
**Former Jeopardy.** defendant insistently urges accrued to the appellant when the jury was sworn to try him in the court of criminal correction upon the charge of assault and battery. It is urged that the fact that no verdict was rendered by the jury in that court, but that the trial was stopped by the judge thereof, as soon as he perceived, as he found and believed, that the defendant ought to have been put upon his trial for a higher offense, does not change the legal situation.

The State relies upon a statute which it is conceded applies to the facts before us. This statute is as follows:

"If, upon the trial of any person for any misdemeanor it shall appear that the facts given in evidence amount in law, to a felony, such person shall not, by reason thereof, be entitled to be acquitted of such misdemeanor; and no person tried for such misdemeanor

shall be liable to be afterward prosecuted for felony on the same facts, unless the court before which such trial may be had shall think fit, in its discretion, to discharge the jury from giving any verdict upon such trial, and to direct such person to be indicted for felony, in which case such person may be dealt with in all respects as if he had not been put upon his trial for such misdemeanor.'' [Sec. 4902, R. S. 1909.]

But it is contended that while the section set out does apply to all and every of the facts in the instant case this section is unconstitutional. That it is violative of the Fifth Amendment to the Constitution of the United States, and of section 23 of article 2 of the Constitution of Missouri.

The St. Louis Court of Criminal Correction, wherein the prosecution of defendant upon the information charging him with assault and battery was begun, and partly heard, to a stage, however, short of a verdict or judgment, has jurisdiction to hold preliminary hearings in felony cases just as and to a like extent as this power is given by statute to justices of the peace out in the State. [Sec. 7, p. 195, Laws 1869.] Likewise, such court has jurisdiction concurrently with justices of the peace to try misdemeanor cases. [Sec. 13, p. 196, Laws 1869.]

Learned counsel for defendant devotes some considerable part of his brief and no mean quantum of learning in an effort to prove that one reason for the constitutional invalidity of section 4902, supra, is that it vests in the justice of the peace or court trying the misdemeanor case, a discretion to toll the constitutional guaranty against being put twice in jeopardy, at the will, whim or caprice of the justice of the peace or court. It may be that such a criticism is of itself a serious danger to the constitutional life of section 4902. But be that as it may, touching this phase we are not compelled to pass and do not pass; for the reason that learned counsel has inadvertently overlooked a

section in the act creating the St. Louis Court of Criminal Correction, which section is not susceptible of the objection urged and which is directly in point and applicable to the facts in the instant case. This section is as follows:

"If in the course of any proceeding in said court by information or otherwise, it shall appear that the defendant has been guilty of felony, the court shall dismiss as to the lesser offense, and proceed to examine the matter, and commit or bail the defendant to answer to an indictment in the St. Louis criminal court, and if upon the trial of a party charged with felony in the St. Louis criminal court it should appear that the defendant is guilty of a misdemeanor only, the case shall not be therefor dismissed, but shall be proceeded on to judgment in said criminal court, to the same effect as if the defendant had been tried for misdemeanor in the court of criminal correction." [Sec. 21, p. 198, Laws 1869.]

Manifestly it must be conceded that the above section covers the facts in this case like a blanket. No attack on the constitutionality of this section is made. But it is probable that we are compelled to examine the constitutional question urged by defendant that he has been, upon the facts, put twice in jeopardy, from all of the four corners. So, unless section 21 of the Act of 1869 (which act established the court of criminal correction, conferred upon it jurisdiction and prescribed its duties, privileges and limitations), is invalid by reason of being opposed to section 23 of article 2 of the Constitution, the point must be ruled against the defendant.

Nothing is plainer than that we come in the last analysis to the words of our own Constitution, the applicable part of which is section 23 of article 2, which reads thus:

"That no person shall be compelled to testify against himself in a criminal cause, nor shall any per-

son, after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty; but if the jury to which the question of his guilt or innocence is submitted fail to render a verdict, the court before which the trial is had may, in its discretion, discharge the jury and commit or bail the prisoner for trial at the next term of court, or, if the state of business will permit, at the same term; and if judgment be arrested after a verdict of guilty on a defective indictment, or if judgment on a verdict of guilty be reversed for error in law nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law."

We need not concern ourselves as to whether either this discussion, or the law, is at all affected by the fact that the act creating the court of criminal correction antedates the adoption of our present Constitution, since the language of the Constitution of 1875 on this point is almost an exact copy of that of 1865, and in substance and meaning precisely the same. [Cf. section 19 of article 1, Constitution of 1865.] Likewise, we need not trouble ourselves in discussing whether the section of the law under inquiry violates the Fifth Amendment to the Constitution of the United States, since while long and seriously debated, it is now a settled and closed question that the provisions of the Fifth Amendment are neither limitations upon nor do they apply to or bind the several States. [1 Bishop's New Crim. Law (8 Ed.), 981; Thorington v. Montgomery, 147 U. S. 490; State v. Rudolph, 187 Mo. 67; Capital City Dairy Co. v. Ohio, 183 U. S. 238; United States v. Keen, 1 McLean, 429.] Neither do we need to consider what the common law was on the question of what constitutes jeopardy, even if the common law on this point were a stable and fixed thing. For while in England the basic principle, "that," as Blackstone expressed it, "no man is to be brought into jeopardy of his life more than once for the same offense" (4

Bl. Com. 335), is axiomatic, it was not, and is not yet
so far fundamental as to rise, as it does with us, to the
dignity of a constitutional guaranty. Speaking of it in
times fairly recent, COCKBURN, C. J., said: "We are
dealing here, not with one of those fundamental prin-
ciples that lie at the foundation of our jurisprudence,
. . . *but with a matter of practice* which has fluctu-
ated at various times, and which even at the present
day may perhaps not be considered as finally settled."
[Reg. v. Winsor, 10 Cox C. C. l. c. 308.]

But whatever the common law may have been, and
whatever the present law of England and the forma-
tive stage thereof, as to being fixed or unstable, may
be, does not matter to us, so far as we are here con-
cerned. The common law has been changed by the stat-
ute quoted. The vexing and unsettled questions of,
"What is jeopardy?" and, "What is the same of-
fense?" and the more comprehensive one of, "When
does jeopardy attach?" all fall out of this case by rea-
son of this statute, which fits the facts here on all-fours.
We pause to say that even if the subsequent conviction
of the defendant in the circuit court for a misdemeanor
only, when he was on trial there for a felony, were not
here a coincidence merely, as it indubitably was, instead
of being jurisdictional, yet this incidental contingency
is provided for and met by the provisions of the section
under inquiry, where it is provided that upon a trial
for a felony in the criminal court if it shall appear that
only a misdemeanor has been committed, the cause
shall nevertheless proceed to final judgment. [Sec. 21,
p. 198, Laws 1869, supra.]

If the provisions of this section contravene those
of section 23, article 2, of our Constitution, defendant
has been put twice in jeopardy and we must discharge
him. For whatever the common law may be, or has
been; whatever the rule may be in other states upon
their variant constitutional provisions, we come back
at last to our own Constitution. For, says Bishop, in

discussing this very question: "The constitutional
command, let us not forget, is the supreme authority;
and judicial decisions, however numerous, are subject
to be corrected by it." [1 Bishop, New Crim. Law,
1012.] The pertinent clause of our Constitution as con-
tained in section 23, supra, is *"nor shall any person,
after being once acquitted by a jury,* be again, for the
same offense, put in jeopardy of life or liberty." We
have seen the condition of the common law on this point,
and that the decision of the matter is referable solely
to the Constitution. We find wherever the constitu-
tion of a State, like that of the Fifth Amendment to the
Constitution of the United States, simply in words, or
in substance, provides that no person shall "be subject
for the same offense to be twice put in jeopardy of life
or limb," that then there is no conflict of authority
upon the proposition that what has mistakenly been
deemed to be the strict common law rule applies, and
that within the meaning of such a constitutional pro-
vision as we quote above, whenever the accused has
been properly put upon his trial, upon a valid indict-
ment before a competent jury in a court having juris-
diction to hear the cause and to make true deliverance
of defendant, jeopardy attaches upon the swearing of
the panel of trial jurors. [State v. Blevins, 134 Ala.
213; People v. Hunckeler, 48 Cal. 331; People v. Ny
Sam Chung, 94 Cal. 304; Ingram v. State, 124 Ga. 448.]
Hundreds of cases thus holding may be cited; there is
no variance in the substance of this view. On the con-
trary, a different view has been taken upon a consti-
tution such as ours where the condition of "acquittal"
is a condition precedent to the attaching of jeopardy.
We have seen that in principle this follows necessarily.
The history of the matter and the common law rule, or
lack of a rule, regarded, there should be no two views
about this. "Acquittal by a jury," says Cyc. "is not
usually requisite to constitute former jeopardy, but un-
der a constitutional provision that no person shall be

put in jeopardy a second time after having been once acquitted 'by a jury' the immunity extends only to those who have been so acquitted.'' [12 Cyc. 275.] This statement is fully borne out by the cases decided in South Carolina under the Constitution of 1868, of that State, which provided: ''No person, after having been once acquitted by a jury, shall again for the same offense be put in jeopardy of his life or liberty.'' Under this provision it was uniformly held that a trial and an acquittal by a jury was a necessary condition precedent to the immunity of twice in jeopardy. [State v. Shirer, 20 S. C. 392; State v. Briggs, 27 S. C. 80; State v. Wyse, 33 S. C. l. c. 589; State v. Richardson, 47 S. C. 166.] After the adoption, however, of the Constitution of South Carolina of 1895, which so changed the provision under inquiry as to make it read in substance as the Fifth Amendment to the Constitution of the United States reads, the rulings of that State changed and fell in line with those of State v. Blevins, supra, and with the holdings of the Federal Courts. [State v. Richardson, supra.]

The peculiar provision of our own Constitution, which is *in pari materia* with that of South Carolina on this point, seems to have been lost sight of in the adjudged cases. This may be explained, possibly, in part by the fact that our Missouri cases dealt with the matter of former jeopardy at first hands, and not in relation to the constitutionality of a statute designed to further and expedite trials and to eliminate outrageous miscarriages of justice by attenuated technicalities. That this is the matter presently in hand must not be left out of mind. For granting, *arguendo,* the similarity in law of the case of assault and battery with that of assault with intent to kill; the jurisdiction of the court and the right of the officer who began the misdemeanor case to likewise legally begin a prosecution for a felony (which section 27, p. 404, Laws 1909, forbids), we yet have before us the mandate of the or-

ganic law that "an acquittal" is a condition precedent
to jeopardy. It cannot be logically urged that since
section 23 of our Bill of Rights contains three excep-
tions only to-wit: (a) if the jury fail to agree; (b) if
the verdict be arrested on a defective indictment, and
(c) if judgment be reversed for error in law, the rule
of *expressio unius, exclusio alterius est,* applies in all
strictness. It is patent that the makers of the Consti-
tution did not mean and could not have meant that
what they said should be thus narrowly construed.
This, for the reason that we have read into this sec-
tion, by our own decisions, exceptions which we rule
do not produce jeopardy, but which are not included
in either of the three set out in Section 23. We have
ruled or expressly approved cases which did rule that,
after the jury was sworn to try an accused person
upon a valid indictment, before a court having juris-
diction, the rule of twice in jeopardy did not apply if
the submission was set aside on account of: (1) The
sickness of the trial judge (State v. Ulrich, 110 Mo.
350.); (2) the death of a juror (State v. Ulrich, su-
pra; Rex v. Edwards, 4 Taunton, 309); (3) the expira-
tion of the term of court before the conclusion of the
trial (State v. Jeffors, 64 Mo. 376; State v. Ulrich,
supra; United States v. Perez, 9 Wheat. 579); (4)
an objection to the indictment by demurrer or motion
to quash after the jury was sworn to try defendant
(State v. Hays, 78 Mo. 600); (5) the discharge of de-
fendant by his own consent express or *implied* (State
v. Hays, supra; Com. v. Stowell, 9 Met. 572; State v.
Slack, 6 Ala. 676); (6) that the conviction of an ac-
cused person was intended by the makers of the Con-
stitution to be a putting him in jeopardy, equally with
an acquittal, though conviction is not named specifi-
cally (State v. Hatcher, 136 Mo. 641); (7) that where
defendant by fraud procures his own trial upon a
lesser offense and pleads guilty and is fined (State v.

256 Mo. 16

Cole, 48 Mo. 70); (8) that jeopardy does not attach where a trial is stopped at any stage short of a verdict, when it appears that the prosecution is being had in a county which had no jurisdiction for lack of venue (Sec. 4940, R. S. 1909; State v. Grubb, 201 Mo. 585). By going outside of our own State this list may be largely increased, but such citations would not illuminate on the point before us right now.

Similar to the statute under discussion here, are the statutes of a number of states authorizing the entry of a *nolle prosequi* in case of a variance, or even permitting a second indictment and trial where an acquittal has happened on account of a variance, and which statutes are held not repugnant to the prohibition as to jeopardy. [People v. McNealy, 17 Cal. 332; State v. Kreps, 8 Ala. 951; People v. Oreileus, 79 Cal. 178.] But, of course, the distinction drawn arises from the lack of identity of the offenses.

It will not be lost sight of that the St. Louis Court of Criminal Correction has as well the jurisdiction to hold preliminary hearings in felony cases, as it has, to try and finally determine misdemeanors. The effect of the section under discussion is to provide an easy and expeditious method of changing from the trial of a misdemeanor case to the holding of a preliminary examination in a felony case whenever the facts are found to warrant the change. Such change entails no hardship upon the defendant which is not offset by the benefit accruing to society, since the matter of taxing the additional costs which the proceeding entails can be regulated by the courts under well settled rules for taxing costs.

We concede the great danger of encroaching upon the fundamental guaranty against being put twice in jeopardy, which would be encountered in saying broadly that in all cases either an acquittal or a conviction (State v. Hatcher, supra) must be had before a jury before jeopardy will be said by us to attach. Such a

construction of the organic law might in many cases so operate as to become unfair and oppressive, as for example, permit the trial court to set aside a submission of a trial for a felony for the sole reason that the State lacked presently at hand sufficient testimony to make out a case, or for some other arbitrary reason entailing upon defendant great hardship. We are not saying that a statute which would permit a trial court *to stop any criminal case* short of a verdict by a jury, whether the reason for so stopping the case were fair or unfair, arbitrary or unconscionable or otherwise, would be upheld; neither are we saying that such an arbitrary act of the court would be upheld, though there be no such statute, but we are saying that under the Constitution of this State the statute under inquiry, which requires a misdemeanor case to be stopped as soon as it appears to the court that the accused is guilty of a felony, is wholesome and salutary, in that, the former status of the common law regarded, it prevents outrageous miscarriages of justice, and because the only reason which allows such stopping and dismissing of the misdemeanor case is writ at large in the section itself, and falls short of the condition precedent of acquittal, and one which while simplifying and expediting procedure, yet works no remediless hardship on defendant. Any other view must needs be builded upon an unsubstantial and bald technicality. This identical result has been reached in the late case of Larson v. State, 93 Neb. 242, where defendant being charged with assault and battery, was put upon his trial before a county judge in Nebraska. After all of the evidence was in, but before a judgment had been rendered, a motion was made based upon the evidence, to stop all further proceedings in the misdemeanor trial and bind defendant over to await the action of the district court upon the charge of assault with intent to inflict great bodily harm, which is a felony. This motion was sustained. Defendant saved

the point and upon his conviction in the district court
of the felony, to answer which he had been bailed, and
which was based on the identical occurrence upon which
the assault and battery prosecution was bottomed, he
appealed and urged former jeopardy. The Supreme
Court held that jeopardy had not attached. There is
in Nebraska a statute similar in substance in all re-
spects to that of our own here under discussion. The
Constitution of Nebraska, however, simply forbids
the putting of any person "twice in jeopardy for the
same offense." [Sec. 12, art. 1, Constitution of Ne-
braska.] This holding of the Nebraska Supreme Court
was largely bottomed upon the ground that the coun-
ty court had no jurisdiction to try felony cases and so
had no authority to try defendant for a felony, and
that thus he had not been in jeopardy before, since
the facts which go to make up jeopardy fell short, to
the extent of the element of jurisdiction in the court to
try the case before it. [Thompson v. State, 6 Neb.
102; State v. Morgan, 62 Ind. 35; State v. Hattabough,
66 Ind. 223.]

In the case of Stoner v. State, 7 Ind. App. 620, it
was held that defendant had not been put twice in jeop-
ardy, by reason of his being put upon his trial for an
assault and battery, which trial was halted, in a sense,
by the verdict of the jury that they found defendant
guilty, but that a fine of twenty-five dollars, which was
the utmost fine which a justice's court had jurisdiction
to assess, was inadequate as punishment. Thereupon,
pursuant to a statute of Indiana, which so provided
and permitted, the justice of the peace held defendant
in bail to answer such felony charge as should be there-
after preferred against him in the circuit court. Upon
appeal, after conviction of such felony, it was held
that jeopardy had not attached for the reason that the
justice's court had no jurisdiction to try defendant
for a felony. The Indiana statute, upon which the
case turned, reads thus:

"Such justice or jury, if they find the prisoner guilty of a misdemeanor, shall assess his punishment; or if, in their opinion, the punishment they are authorized to assess is not adequate to the offense, they may so find, and, in such case, the justice shall hold such prisoner to bail for his appearance before the proper court, or commit him to jail in default of such bail."

The applicable provision of the Indiana Constitution is in all respects like that of Nebraska, quoted, supra. While the facts in these cases are stronger by far than those in the instant case, yet it is obvious that there yet lacks something of analogy, by reason of our decisions; since, while it was said in the case of State v. Huffman, 136 Mo. l. c. 63, that a conviction for an assault and battery would be no bar to a subsequent trial upon the identical facts for an assault with intent to kill, it was yet *held* in a later case in the same volume that a *conviction* for assault and battery *was jeopardy* and did bar a subsequent trial when set up by plea against a prosecution for assault with intent to kill, based upon an identical occurrence. [State v. Hatcher, 136 Mo. l. c. 643.] This compelling similarity, however, does inhere: That in the cases of Stoner v. State, supra, and Larson v. State, supra, just as in the case at bar, the cases were taken from the court which tried the misdemeanors (which in all three cases had jurisdiction both to try and finally adjudge misdemeanors, and to hold preliminary examinations), after the jury was sworn, but before judgment in the misdemeanor cases was rendered.

The case of People v. Hunckeler, supra, is not in point. For there the defendant was placed on trial for manslaughter in the district court of San Francisco. After the taking of all evidence on both sides was concluded, the trial court, on motion of the State, without defendant's consent, dismissed the jury and ordered defendant held so that a charge of murder

could be lodged against him. The action of the court was based on a California statute, which provides:

"If it appears by the testimony that the facts proved constitute an offense of a higher nature than that charged in the indictment, the court may direct the jury to be discharged, and all proceedings on the indictment to be suspended, and may order the defendant to be committed or continued on, or admitted to bail to answer any indictment which may be found against him for the higher offense. If an indictment for the higher offense is found by the grand jury impaneled within a year next thereafter, he must be tried thereon, and a plea of a former acquittal, to such last found indictment, is not sustained by the fact of the discharge of the jury on the first indictment."

The defendant Hunckeler was afterwards tried for murder, and being convicted of manslaughter, appealed upon the ground that he had been twice in jeopardy, notwithstanding the statute, which he attacked as unconstitutional, claiming that it violated section 8 of article 1 of the Constitution of California, which provides that "no person shall be subject to be twice put in jeopardy for the same offense." The Supreme Court of California, holding defendant's plea for former jeopardy good, among other things, said:

"This language [of the California Constitution] is more than the equivalent of 'no person shall be twice tried for the same offense.' [1 Bishop, Cr. L. 1018.] A defendant is placed in apparent jeopardy when he is placed on trial *before a competent court and a jury impaneled and sworn.*"

We italicize the words which make upon the facts whatever distinction exists between the instant case and the Hunckeler case. The broad distinction created by the variant wording of their constitution and ours has already been noted at length. The district court

of San Francisco apparently held both trials and had jurisdiction to try and determine fully the first charge as well as the last.   Neither is the case of People v. Ny Sam Chung, 94 Cal. 304, in point, except upon the question of identity of offense arising from inclusion of elements of one in the other, regardless of whether one is but a higher grade of the other or not. · It is an authority in point upon the facts and the law in the case of State v. Hatcher, 136 Mo. 61, as is also the case of State v. Wiles, 26 Minn. 381.   But that case is not this case at bar.

More nearly in point, and upholding the view we here take in broad principle, are the cases of State v. Littlefield, 70 Me. 452; State v. George, 53 Ind. 434; State v. Hill, 122 La. 711; Com. v. Harris, 8 Gray, 470; and Com. v. Sullivan, 156 Mass. 487.

Therefore, being mindful of the rule that we should not declare a statute unconstitutional unless we find and believe it to be so beyond a reasonable doubt (State v. Baskowitz, 250 Mo. 82; State v. Thompson, 144 Mo. 314), and the matter of jeopardy being here wholly referable to this statute, which statute we are unable for the reasons given to declare invalid, under the provisions of our Constitution, we disallow the point to the defendant.

II.   Defendant also contends that error was committed in refusing to permit Dr. Breibach to testify. Defendant tells us in his brief that he offered Dr. Breibach in order to show "the physical condition of the wound" inflicted by defendant upon Rosenthal, the prosecuting witness.   The record does not bear out the contentions of defendant's learned. counsel as to the object with which Dr. Breibach was offered. There is not in the record a word even from which the purpose of calling Dr. Breibach may be inferred.   He was called by defendant; he said he was a physician; it was developed by the questions that he had been

called by Rosenthal to treat him for the wound inflicted upon him by defendant; objection being made by the State on the ground of privilege, Dr. Breibach was not allowed to further depose, and defendant saved his exceptions. This is all the record shows. We do not know for what purpose the witness was called. The defendant admitted the stabbing and claimed that he acted in self-defense. He was convicted of common assault only. Pretermitting the question of whether the case of Epstein v. Railroad, 250 Mo. 1, applies, as also the question of whether, when the cutting and stabbing with a knife is admitted and the plea of self-defense is alone urged for a substantive or evidentiary defense, and the trial results in a conviction of common assault, the matter of depth and extent of wounding and quantum of illness produced, would ever so far cease to be a collateral question as to allow reversible error to be bottomed on it, we here content us with saying, that since we do not see how defendant was hurt by the rejection of Dr. Breibach's testimony, and since defendant does not upon the record by an offer to prove or otherwise, show us how his case was hurt, we must disallow this point. [Hickman v. Green, 123 Mo. 165; Kraxberger v. Roiter, 91 Mo. 404.]

Other matters are suggested, but having examined them, we find nothing novel urged, or any error rising to a stature meet for reversal. Let the case be affirmed.

*Walker, P. J.,* and *Brown, J.,* concur.