## STATE v. CHARLES M. BIRCKHEAD.

(Filed 21 March, 1962.)

**1. Criminal Law § 26; Constitutional Law § 34—**

The fundamental principle that no person can be twice put in jeopardy of life or limb for the same offense comes within the purview of Art. I, Sec. 17 of the State Constitution.

**2. Criminal Law § 26—**

A conviction or acquittal of a less degree of a crime will bar a subsequent prosecution for a higher degree of the crime arising out of the same act when the facts necessary to convict in the second prosecution would necessarily have been sufficient for conviction in the first, with the sole exception that a conviction of a minor offense in an inferior court does not bar a prosecution for a higher crime embracing the former when the inferior court does not have jurisdiction of the higher crime.

**3. Rape § 6—**

Assault with intent to commit rape is a less degree of the crime of rape. G.S. 15-170.

**4. Criminal Law § 26—**

A conviction or acquittal on an indictment charging assault with intent to commit rape will bar a subsequent prosecution for rape based upon the same occurrence.

**5. Same—**

Where the same act constitutes a violation of two statutes and, in addition to any common elements, an additional fact must be proven in each which is not required in the other, the offenses are not the same in law and in fact, and conviction or acquittal in the one will not support a plea of former jeopardy in the other, but when only one of the offenses requires the proof of an additional fact, so that evidence necessary to sustain a conviction of such offense would necessarily be sufficient to sustain conviction in the other, the first is a higher degree of the second, and the principle of former jeopardy applies.

**6. Same—**

Jeopardy attaches when a defendant in a criminal prosecution is placed on trial on a valid indictment or information before a court of competent jurisdiction after arraignment and after plea, and after a competent jury has been empaneled and sworn.

**7. Criminal Law § 122—**

In cases less than capital the court in the exercise of its sound discretion may order a mistrial before verdict, without the consent of defendant, for physical necessity or for necessity of doing justice, and the court need not support its order by findings of fact.

**8. Same; Criminal Law § 167—**

The discretionary power of the trial judge to order a mistrial is not

unlimited, and if the court acts arbitrarily and beyond the bounds of its discretion, the act amounts to a gross abuse of discretion.

**9. Same—**

Where it is apparent from the record that the court ordered a mistrial on an indictment charging assault with intent to commit rape solely in order that defendant might be indicted and prosecuted for rape, and that there was no interference on the part of defendant or from any other source, there is no necessity for ordering a mistrial in the "furtherance of justice" within the purview of the discretionary power of the court to order a mistrial, and the court's act in so doing constitutes an abuse of discretion.

**10. Criminal Law § 26—**

In this prosecution for assault with intent to commit rape the prosecuting witness testified to the fact of penetration and the trial judge thereupon ordered a mistrial solely for the purpose of permitting the solicitor to charge defendant with rape. *Held:* In the prosecution for rape growing out of the same act, defendant's plea of former jeopardy should have been allowed.

PARKER, J., dissents.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Hobgood, J.,* April 1961 Term of CUMBERLAND. It was docketed and argued as case No. 582 at the Fall Term 1961.

This is a criminal action. The bill of indictment charges defendant with rape of an adult female. Defendant pleaded not guilty, and the jury returned a verdict of "guilty of rape with recommendation of life imprisonment."

The trial judge entered judgment "that defendant be confined to State's prison . . . for and during the term of his natural life."

Defendant appeals and assigns errors.

*Attorney General Bruton for the State.*
*Arthur L. Lane and Earl Whitted, Jr., for the defendant.*

MOORE, J. Defendant assigns as error the denial of his plea of former jeopardy.

The date of the alleged offense is 29 December 1960. At the February Term 1961 the grand jury returned a true bill of indictment against defendant for an assault with intent to commit rape. During the second week of that term defendant was placed on trial on this charge. He was arraigned and pleaded not guilty. A jury was sworn and empaneled. The State offered evidence. In the course of prosecutrix's testimony the following transpired:

"Q. What, if anything, did this man do with his private parts?

"A. He just, he just, had intercourse with me, I guess.

"Q. Did this man ever penetrate you with his private part?

"A. Yes.

"Q. How long did this man stay in your bed room?

"A. Maybe ten minutes; I guess ten or fifteen minutes. I am not sure how long it was.

"Court: Members of the jury, go back to the jury room a minute.

"The jury retired.

"Solicitor Braswell: If it please the Court, may we make this general statement to the Court. Now that we have heard this much of the prosecuting witness' testimony, and heard the facts as reported to us at this time, now that we have heard from the witness stand, we desire that the Court order a mistrial and we desire to submit to the Grand Jury a bill of indictment for the Capital Crime of Rape, and desire that this man be held without privilege of bond.

"Court: All right, take the order of the Court: It is ordered that a Juror be withdrawn, Juror No. 12, and a mistrial is ordered to the end that justice might be served and that a correct charge may be presented to the Grand Jury.

"It is Further Ordered that the defendant be held without privilege of bond pending Grand Jury indictment."

At the March Term 1961 the grand jury returned a true bill of indictment against defendant for rape. This indictment is based on the same occurrence and involves the same female as the assault bill. The rape case was called for trial during the second week of the April Term 1961. Defendant entered a plea of former jeopardy which was heard and rejected. The trial proceeded; defendant was convicted and sentenced to life imprisonment.

Captain Leon Allen, who took part in the investigation on 29 December 1960, testified for the State at the second trial and stated he talked to prosecutrix on the day of the occurrence and it was his "impression from that conversation that there had been no penetration." The prosecutrix stated on cross-examination at the second trial: "I testified in the preliminary hearing that I did not feel the man's penis in me. When I testified that, I thought that this man meant with my hands, but I did feel him but not with my hands." Other witnesses testified at the second trial that prosecutrix told them on the day of the occurrence that she had been penetrated.

"It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice

put in jeopardy of life or limb for the same offense. *S. v. Prince*, 63 N.C. 529; *S. v. Hicks*, 233 N.C. 511, 64 S.E. 2d 871. . . . While the principle is not stated in express terms in the North Carolina Constitution, it has been regarded as an integral part of the 'law of the land' within the meaning of Art. I, sec. 17. *S. v. Mansfield*, 207 N.C. 233, 176 S.E. 761." *State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243.

It was an established principle at common law that a conviction or acquittal of a lesser degree of a criminal offense was a bar to a subsequent prosecution of a higher degree of the same offense. ". . . (I)f a man be acquit generally upon an indictment of murder, *auterfoits acquit* is a good plea to an indictment of manslaughter of the same person, or *e converso*, if he be indicted of manslaughter, and be acquit, he shall not be indicted for the same death, as murder, for they differ only in degree, and the fact is the same." 2 Hale P.C. 246. See also Chitty's Blackstone, 19th London Ed., Book IV, p. 336.

In the United States it is the accepted rule that "prosecution for and a conviction or acquittal of part of a single crime is a bar to any subsequent prosecution based upon the whole or any part of the same crime, . . . Also, a conviction of a lesser offense bars a subsequent prosecution for a greater offense, in all those cases where the lesser offense is included in the greater offense, and vice versa. But a former trial and acquittal or conviction will not be a bar to a subsequent prosecution unless the defendant could have been convicted on the same evidence in the former trial, of the offense charged in the subsequent trial." 1 Wharton's Criminal Law and Procedure (1957), pp. 294, 295, citing many cases. Accord: 15 Am. Jur., Criminal Law, s. 386, pp. 60-62.

North Carolina is strongly committed to this principle. In *State v. Midgett*, 214 N.C. 107, 198 S.E. 613, *Stacy, C.J.*, quoted with approval from *Dowdy v. State*, 13 S.W. 2d 794 (Tenn.) the following: "When the facts constitute two or more offenses, wherein the lesser offense is necessarily involved in the greater — as an assault is involved in an assault and battery, as an assault and battery is involved in an assault and battery with intent to commit felony and as a larceny is involved in a robbery — and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second." The rule in this jurisdiction has been stated in this wise: "Where the second indictment is for a crime greater in degree than the first, and where both indictments arise out of the same act, it is held that an acquittal or conviction for the first is a bar to a prosecution for the second." 15 N.C. Law Review 55. This is hereinafter referred to as the "lesser degree rule."

The following cases illustrate the application of the rule by this Court. It was held that a conviction for assault and battery barred a subsequent prosecution for riot. *State v. Ingles,* 2 Haywood 5, 3 N.C. 4. Where defendant was indicted for robbery, and had been previously tried on charges of burglary and larceny, arising out of the same occurrence as the alleged robbery, and had been acquitted of burglary and convicted of larceny, it was held that larceny is a lesser grade or degree of the offense of robbery and conviction of the former bars prosecution of the latter. *State v. Lewis,* 9 N.C. 98. Where defendant had been acquitted on charges of conspiracy to burglarize a home and of burglariously robbing the home, it was held that the trial judge should have heard and disposed of defendant's plea of former jeopardy at the trial of defendant on a murder indictment — an occupant of the home having been killed in the perpetration of the alleged burglary and robbery. *State v. Bell,* 205 N.C. 225, 171 S.E. 50. After defendant's acquittal on an indictment for arson, it was error for the court to withhold from the consideration of the jury defendant's plea of former acquittal in a trial for murder of one who was fatally burned in consequence of the alleged arson. *State v. Clemmons,* 207 N.C. 276, 176 S.E. 760. In *State v. Cross,* 101 N.C. 770, 778, 7 S.E. 715, it is said: ". . . (W)hen an offense is a *necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction,* a conviction or acquittal of one is a bar to a prosecution to the other."

The only exception to this well established rule is the holding in some cases that conviction of a minor offense in an inferior court does not bar a prosecution for a higher crime, embracing the former, where the inferior court did not have jurisdiction of the higher crime. *State v. Albertson,* 113 N.C. 633, 18 S.E. 321; *State v. Shelly,* 98 N.C. 673, 4 S.E. 530; *State v. Huntley,* 91 N.C. 617.

We now consider the question as to whether or not assault with intent to commit rape is a lesser degree of the offense of rape. It was formerly held that they were separate offenses and the former was not a lesser degree of the latter. In *State v. Jesse,* 20 N.C. 95 (1838), defendant was charged with rape and assault with intent to commit rape in separate counts in the same bill of indictment. He was acquitted of rape and convicted of assault with intent to commit rape. Judgment on the assault count was arrested because of a fatal defect in the bill of indictment. Defendant was later charged with assault with intent to commit rape, involving the same transaction, in a legally sufficient bill of indictment. He pleaded formal acquittal. On appeal it was held that prosecution under the second indictment was not barred by the acquittal on the rape count in the first. It would seem that there was

valid basis for this decision, under the circumstances there presented, without reaching the question as to whether the assault charged was a lesser degree of rape. However, the Court states *inter alia*: ". . . both the crime of rape, and that of assault with intent to commit rape are felonies created by statute. But they owe their existence to different statutes; the former to the statute of Westminster, 2nd, and the latter, to the statute of this State of 1823." Further: ". . . an indictment *for doing a criminal act,* is not supported by proof of an intent to do that act, although the intent to perpetrate, and the perpetration, be each a crime, and of the same grade. . . . (A)n acquittal upon an indictment charging the doing of an act is not a bar to an indictment charging the intent to do it." Parenthetically, both rape and assault with intent to commit rape were crimes at common law. Chitty's Blackstone, 19th London Ed., Book IV, pp. 210-215 and 217.

The apparent holding in *Jesse* has been overruled and abrogated both by statute and court decisions. This Court in an opinion delivered by *Parker, J.,* declared: "An assault with intent to commit rape is a lesser degree of the felony and crime of rape. It is well settled with us that an indictment for rape includes an assault with intent to commit rape. G.S. 15-170; *S. v. Roy* and *S. v. Slate,* 233 N.C. 558, 64 S.E. 2d 840. G.S. 15-169 provides that 'On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted.' " *State v. Green,* 246 N.C. 717, 719, 100 S.E. 2d 52. See also *State v. Williams,* 185 N.C. 685, 116 S.E. 736. G.S. 15-169 was enacted in 1885. G.S. 15-170 (1891) provides: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."

It is now settled law in this jurisdiction that an assault with intent to commit rape is a lesser degree of the crime of rape. Therefore, a conviction or acquittal of the former bars a subsequent prosecution of the latter based on the same act or transaction. This should settle the first phase of the matter under consideration.

But the State insists that in the instant case a different test controls. It contends that the two offenses are not the same in fact or in law. Its argument is very similar to the Court's discussion in *Jesse.* The gist of the State's position is: "In order for a defendant to be convicted of the crime of rape there must be proof of penetration, but, on a charge of assault with intent to commit rape, this fact is not an essential element. The two charges are separate and distinct crimes."

It cites and relies on three cases. The case *sub judice* is of sufficient importance to justify a thorough examination of each of these cases.

(1) *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424. Defendant was acquitted of rape. He was subsequently indicted and arraigned on a charge of carnal knowledge of a female over 12 and under 16 years of age, based on the same act or occurrence. The trial court overruled defendant's plea of former acquittal, and this Court sustained the ruling. *Higgins, J.,* speaking for the Court declared: " 'To support a plea of former acquittal it is not sufficient that the two prosecutions should grow out of the same transaction, but they must be the same offense —*the same both in fact and law.*' *S. v. Malpass,* 189 N.C. 349, 127 S.E. 248; *S. v. Taylor,* 133 N.C. 755, 46 S.E. 5; *S. v. Williams,* 94 N.C. 891. 'If two statutes are violated even by a single act and *each* offense requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the one statute'. *S. v. Stevens,* 114 N.C. 873, 19 S.E. 861; *S. v. Robinson,* 116 N.C. 1046, 21 S.E. 701."

This test applied in the *Barefoot* case is indubitably the correct test for determining, upon a plea of former jeopardy, whether or not offenses are the same in fact and in law. Our Court has consistently applied this test in a long line of opinions. The number of cases is too great to justify a complete listing here, but the following are typical: *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871; *State v. Williams,* 229 N.C. 415, 50 S.E. 2d 4; *State v. Pierce,* 208 N.C. 47, 179 S.E. 8; *State v. Ellis,* 200 N.C. 77, 156 S.E. 157; *State v. Hooker,* 145 N.C. 581, 59 S.E. 866; *State v. Lytle,* 138 N.C. 738, 51 S.E. 66; *State v. Taylor, supra; State v. Robinson, supra; State v. Morgan,* 95 N.C. 641; *State v. Nash,* 86 N.C. 650; *State v. Yancy,* 4 N.C. 133.

The test is stated in *State v. Stevens, supra,* as follows: "A single act may be an offense against two statutes, and if *each* statute requires proof of an additional fact, which the other does not, an acquittal or conviction under either statute does not exempt defendant from prosecution and punishment under the other." (Emphasis added.) The test is explained in *State v. Nash, supra,* in this manner: ". . . two offenses may have several circumstances in common, and yet to constitute *either* some other circumstance is to be added; and it is the allegation on the record of this additional circumstance, peculiar to *each,* which constitutes them distinct crimes. . . ." (Emphasis added.) This is hereinafter referred to as the "additional facts test."

If two statutes are violated by a single act or transaction, and if *each* statute requires proof of an additional fact not required by the other, the offenses are not the same. As explained in *Barefoot,* relied on by the State, rape embraces elements not required to be proved in

carnal knowledge of a female between 12 and 16 years of age, and carnal knowledge embraces elements not required to be proved in rape — the offenses therefore are not the same though they have some elements in common. The opinion explains the matter thus: "The two offenses are separate and distinct. The constituent elements are not identical. If the victim in a prosecution for rape is over 12 years of age, the intercourse must be *by force and against her will.* Her former chastity is immaterial. Her consent is a complete defense. In a prosecution for carnally knowing and abusing a female child over 12 and under 16 years of age, her former chastity is a material part of the charge and must be proved. Her consent is not a defense."

Application of the test is clearly illustrated in *State v. Robinson, supra.* The offenses involved are assault with a deadly weapon and carrying a concealed weapon. Actual possession of a pistol, on the occasion in question, is the common factor. The opinion states: "The assault is an entirely separate and distinct offence from that of carrying a concealed weapon, and it does not alter the case that the assault was made with a weapon illegally concealed. The assault with a deadly weapon is a complete offence whether the weapon is carried concealed or openly. The offence of carrying a concealed weapon is complete, irrespective of the fact that an assault is or is not committed with it. Therefore the conviction for an assault with deadly weapon will not sustain a plea of former conviction in a subsequent trial for carrying a concealed weapon." In like manner the offenses involved in the other cases listed in the third paragraph next above are shown to be different and distinct. The instant case does not meet this test of distinctness. It is true that rape embraces an element — penetration — which is not involved in assault with intent to commit rape. But every element of assault with intent to commit rape is embraced in the crime of rape. The "additional facts test" is bilateral in application, and *each* offense must require proof of an element or fact not required to be proved as to the other. Therefore, upon a plea of jeopardy, rape and assault with intent to commit rape are the same in fact and law according to the "additional facts test."

For further clarity *Barefoot* states the corollary to the "additional facts test" as follows: "The rationale of the rule seems to be: If the facts alleged in the second indictment, when offered in evidence, would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise it does not." This principle is likewise deeply imbedded in our law and has been consistently applied as complimentary to the "additional facts test." The following are a few of the many cases in which this rule has been discussed and applied: *State v. Bell, supra; State v. Freeman,* 162 N.C. 594, 77 S.E. 780; *State v. Hankins,*

136 N.C. 621, 48 S.E. 593; *State v. Williams, supra; State v. Nash, supra; State v. Lindsay,* 61 N.C. 468; *State v. Stanly,* 49 N.C. 290; *State v. Birmingham,* 44 N.C. 120. For convenience, this rule is hereinafter referred to as the "included offense rule," and this is merely an enlargement or broader application of the "lesser degree rule." This rule when applied to the offenses in the instant case demonstrates that, upon a plea of former jeopardy, they are the same in fact and law. The facts alleged in the rape bill, when offered in evidence, are sufficient to sustain a verdict of guilty of assault with intent to commit rape. G.S. 15-170; *State v. Green, supra.* Furthermore, the record shows that the judge at the second trial instructed the jury that it might return a verdict of guilty of assault with intent to commit rape. The State's testimony was such as to fully justify such verdict.

The principles laid down in the *Barefoot* case fully sustain the conclusion we had reached by application of the "lesser degree test." They do not support the State's contention.

(2) The second case relied on by the State is *State v. Midgett, supra.* Defendant, while operating his automobile, struck and killed two pedestrians. On charges of drunken and reckless driving he was acquitted in recorder's court. He was thereafter indicted for manslaughter and pleaded former acquittal. The plea was rejected. On appeal this ruling was sustained.

In its argument in the instant case the State highlights the following statement taken from the opinion in *Midgett:* "Additional facts must be alleged and proved to establish the greater which need not appear on the trial of the lesser offense. *S. v. Pierce,* 208 N.C. 47, 179 S.E. 8; *S. v. Hooker,* 145 N.C. 581, 59 S.E. 866; *S. v. Robinson,* 116 N.C. 1046, 21 S.E. 701; *S. v. Stevens,* 114 N.C. 873, 19 S.E. 861." A careful reading of the opinion in context leads to the conclusion that this statement is not intended as an independent test of general application. The cases cited as authority for the statement do not support the proposition that it, standing alone, is a test. The cited cases apply the "additional facts test" which is stated in the *Barefoot* case and is fully discussed above. The Court was merely making a unilateral application of the "additional facts test."

Moreover, the Court was careful, as a preliminary matter, to state: "Nor is the one (drunken and reckless driving) a lesser degree of the other (manslaughter)." (Parentheses supplied.) The implication is clear. If the one offense had been a lesser degree of the other, the purported test would have no application.

Furthermore, this statement which the State seeks to apply as a test in the case at bar is not the basis upon which the decision rests. The opinion says: "It seems clear . . . that the instant case falls

within the terms of the fourth class as set out by *Mr. Justice Cook* in the *Dowdy case.* . . ." The *fourth class* referred to is stated as follows: "But when the same facts constitute two or more offenses, wherein the lesser offense is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act." This principle of law is, of course, a limitation on and in some respects the converse of the "included offense rule" set out in the *Barefoot* case and already discussed herein. This principle stated by *Justice Cook* is, of course, valid and sound. For instance, under this principle acquittal or conviction of a simple assault or assault with a deadly weapon would not bar a subsequent prosecution for murder. Neither of the former are necessarily included in or lesser degrees of the offense of murder.

The opinion in *Midgett* adds: "There is also authority for the position that jeopardy incident to a trial before an inferior court does not extend to an offense beyond its jurisdiction — the theory being that, to be in jeopardy, there must be not only a sufficient legal charge, but also a sufficient jurisdiction to try the charge."

It is manifest that the decision in *Midgett* does not rest on the purported test relied on by the State here, and that the Court did not intend in the making of the statement to promulgate a new independen test for differentiating criminal offenses, or to even suggest that the language used is of general application as a test, or that it was intended to be anything more than a unilateral application of the universally recognized "additional facts rule" set out in *Barefoot*.

We are not unmindful of the statement in *State v. Freeman, supra,* (quoted in *State v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594) as follows: ". . . (T)he offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proven in the trial of the other, although some of the same acts may be necessary to be proven in the trial of each." No authority is cited in *Freeman* for this statement. A careful examination of the *Freeman* and *Lippard* opinions leads to the conclusion that the Court intended to state the "additional facts test," and used language which falls short of the full import of that test. If the language used were a true test for determining whether or not offenses are the same, a person who has committed a felonious assault — an assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death — could be successively convicted and punished for an assault inflicting serious injury, an asault with a deadly weapon, and the felonious assault. Likewise, a person who has committed the capital offense of murder could

be successively convicted and punished for manslaughter, murder in the second degree and murder in the first degree. Also, a person who has committed rape could be indicted in two counts, in one for rape and in the other for assault with intent to commit rape, and, upon a verdict of guilty as charged, could be punished on both counts.

(3) The State also relies on *State v. Malpass,* 189 N.C. 349, 127 S.E. 248. In this case defendant scattered nails and tacks in an unpaved public highway, and as a result the tires of several automobiles were punctured. Defendant was charged in separate counts with obstructing the public highway and malicious injury to personal property. The jury convicted on both counts, and punishment was imposed in each count. Defendant complained that the judgment inflicted double punishment for the same offense. The Court held that the offenses were not the same. The "additional facts test" is stated, and the Court rests its decision on the statement quoted above from the *Freeman* case. It seems clear that the Court considered this statement only a limited and unilateral application of the "additional facts test." These matters have hereinbefore been fully discussed. The *Malpass* case adds nothing to the matters already discussed.

The cases relied on by the State do not justify its conclusion. When all pertinent tests are applied, it is palpably evident that, on consideration of a plea of former jeopardy, the offense of assault with intent to commit rape is a lesser degree of the offense of rape, when based on the same occurrence, and the two offenses are the same in fact and in law.

In the instant case there was no acquittal or conviction at the first trial. A mistrial was ordered. We must now inquire whether, under the law of this State, jeopardy attached on the first trial, and whether the circumstances were such as to permit the trial court in its sound discretion to discharge the jury before verdict and order a mistrial.

In a few jurisdictions jeopardy does not attach until there has been an acquittal or conviction. *State v. Buente,* 165 S.W. 340 (Mo. 1914); *State v. Van Ness,* 83 A. 195 (N.J. 1912). But North Carolina follows the majority rule and holds that ". . . jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) On a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn to make true deliverance in the case." "*State v. Bell, supra; State v. Ellis, supra.* In the instant case jeopardy attached at the first trial unless prevented by the discharge of the jury and the ordering of a mistrial before verdict.

This Court in an opinion delivered by *Bobbitt, J.,* in *State v. Crocker, supra,* reviewed its prior decisions and stated the law in this juris-

diction relative to discharge of jury before verdict and ordering mistrials, without the consent of defendant, as follows:

"In the earlier cases the rule as stated by *Ruffin, C.J.,* in *S. v. Ephraim,* 19 N.C. 162, was that, *in the absence of the defendant's consent,* the trial judge had no authority to discharge the jury and hold the defendant to await a second trial 'but for evident, urgent, overruling necessity, arising from some matter occurring during the trial, which was beyond human foresight and control; and generally speaking, such necessity must be set forth in the record.' (Emphasis supplied.) See *S. v. Garrigues,* 2 N.C. 241; *In re Spier,* 12 N.C. 491.

"As pointed out by *Stacy, C.J.,* in *S. v. Beal,* 199 N.C. 278, 294, 295, 154 S.E. 604, the rule has been greatly relaxed; and it has been recognized that the necessity justifying an order of mistrial may be one of two kinds, 'physical necessity and the necessity of doing justice.'

"The two kinds of necessity, *i.e.,* 'physical necessity' and the 'necessity of doing justice' were so classified by *Boyden, J.,* in *S. v. Wiseman,* 68 N.C. 203. As to 'physical necessity,' he said: 'One class may not improperly be termed physical and absolute; as where a juror by a sudden attack of illness is wholly disqualified from proceeding with the trial; or where the prisoner becomes insane during the trial, or where a female defendant is taken in labor during the trial.' As to 'necessity of doing justice,' he said that this arises from the duty of the court to 'guard the administration of justice from fraudulent practices; as in the case of tampering with the jury, or keeping back the witnesses on the part of the prosecution.'

"It will be observed that 'the necessity of doing justice' is not an expression connoting a vague generality but one that relates to a limited subject, namely, the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law. In *S. v. Wiseman, supra,* the basis for mistrial was 'tampering with the jury.' In *S. v. Bell,* 81 N.C. 591, and in *S. v. Washington,* 89 N.C. 535, 45 Am. Rep. 700, a juror had fraudulently procured himself to be put on the jury for the purpose of acquitting the defendant in a trial for murder. In *S. v. Cain,* 175 N.C. 825, 95 S.E. 930, a juror had given a false answer to the solicitor bearing upon his fitness and qualifications to serve as a juror. In *S. v. Upton,* 170 N.C. 769, 87 S.E. 328, it was discovered that a juror was disqualified because of nonresidence. As stated by *Ashe, J.,* in *S. v. Bell,* 81 N.C. 591, it is the duty of the trial judge 'to see that there is a fair and impartial trial, and to interpose his authority to prevent all unfair dealing and corrupt or fraudulent practices on the part of either the prosecution or the defense.'

"The rule recognized and restated in many cases is succinctly expressed by *Pearson, C.J.,* in *S. v. Jefferson,* 66 N.C. 309, as follows:

'It is settled that in a trial for a capital felony for sufficient cause the Judge may discharge the jury and hold the prisoner for another trial; in which case it is his duty to find the facts and set them out in the record, *so that his conclusion as to the matter of law arising from the facts may be reviewed by this Court.*' (Emphasis supplied.) While it is stated repeatedly that the order of mistrial, even in capital cases, is a matter resting in the sound discretion of the trial judge, it is equally well settled that the findings of fact must be sufficient to warrant the exercise of this discretionary authority. *S. v. Tyson, supra.*"

"In misdemeanors, and all cases of felonies not capital, the court below has the discretion to order a mistrial and discharge a jury before verdict in furtherance of justice and the court need not find facts constituting the necessity for such discharge, and ordinarily the action is not reviewable." *State v. Guice,* 201 N.C. 761, 763, 161 S.E. 533. Such action by the judge is reviewable only in case of gross abuse of discretion. *State v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264.

We conclude that the trial judge in cases less than capital may, in the exercise of sound discretion, order a mistrial before verdict, without the consent of defendant, for physical necessity such as the incapacitating illness of judge, juror or material witness, and for "necessity of doing justice." He need not support his order by findings of fact. His order is not reviewable except for gross abuse of discretion, and the burden is upon defendant to show such abuse. But the discretion of the trial judge is not unlimited, and if it be affirmatively shown that no physical necessity or "necessity for doing justice" existed, the order of mistrial will be deemed arbitrary and beyond the scope of the court's discretion. Where a court acts arbitrarily and beyond the bounds of its discretion under the semblance of exercising discretion, such action by the court amounts to a gross abuse of discretion.

The question here is whether the court in ordering a mistrial exceeded the limits of its discretion. The court made no specific findings of fact, but the reason for the order of mistrial clearly appears in the record. Defendant was on trial upon a bill of indictment charging an assault with intent to commit rape. In the course of prosecutrix's testimony she stated that she had been penetrated. The Solicitor immediately moved for a mistrial that he might "submit to the Grand Jury a bill of indictment for the Capital Crime of Rape." The court immediately granted the motion and stated that mistrial was ordered "to the end that justice might be served and that a correct charge may be presented to the Grand Jury." It is patent that the jury was discharged in order that defendant might be charged with a higher degree of the offense.

Physical necessity and "necessity for doing justice" are not involved. The trial could have proceeded to verdict and judgment in a fair, orderly and legal manner. No fraudulent practices were involved. There had been no jury tampering, no "keeping back" of witnesses on the part of the State, and no "occurrence of an incident of a nature that would render impossible a fair and impartial trial under the law."

The mistrial was not in the "furtherance of justice," but was obviously unjust if defendant was thereby exposed to punishment for a higher degree of the offense charged. The State has dominant control of criminal cases. It has at its command law enforcement officers to fully investigate alleged offenses and report the results of the investigation. From the information obtained it decides what, if any, the criminal charge shall be. It determines when it is ready for trial and fixes the time for the trial to begin. It has full opportunity to confer with its witnesses before the trial commences. If such conference discloses that it has misconceived the offense involved, it may send a new bill and delay the trial until it has been returned. If its preparation has been faulty, is it thereby entitled to more than one full opportunity to make preparation and gain a conviction, when there has been no fraud or interference on the part of defendant or from any other source? On the other hand, if the prosecuting witness is uncertain of the details of the occurrence until testimony is being given on the trial in the court of competent jurisdiction, does justice require such stringent action based on the belated revelation? We think not. Furthermore, in the instant case, the court sought by its order to expose defendant to capital punishment. By any reasonable appraisal of the circumstances, this calls for a strict application of the rules for, indeed, it places this in the category of capital cases. The very fact that a mistrial was ordered before verdict indicates that the judge was of the opinion that a verdict and judgment on the offense of assault with intent to commit rape would bar a subsequent prosecution for rape — which is correct indeed. *State v. Shepard,* 7 Conn. 54. The court was attempting to do indirectly what it could not do directly.

We have no case in this jurisdiction on all fours with the case at bar, but the cases in other jurisdictions (following the majority rule as to when jeopardy attaches, as we do) hold, without exception, that where the trial court, without consent of the defendant, discharges the jury because it is of the opinion that the evidence shows him guilty of a higher crime, for which crime he is subsequently indicted or tried, he is twice in jeopardy and should be discharged. The textbook writers are in accord with this principle, as will appear below. Some courts have reached this conclusion on constitutional grounds. *People v. Hunckeler,* 48 Cal. 331 (1874) ; *People v. Karney,* 44 N.Y.S.

2d 691 (1943), affd. on appeal to Court of Appeals, 56 N.E. 2d 102. It is true that California and New York have provisions against double jeopardy in their constitutions. We do not, but we have said that "it has been regarded as an integral part of the 'law of the land' within the meaning of Art. I, s. 17." *State v. Crocker, supra; State v. Mansfield, supra.* We now turn to the authorities elsewhere.

"Where, on the trial, the court, without the consent of accused, discharges the jury because it is of the opinion that the evidence shows him guilty of a higher crime, for which crime he is subsequently indicted or tried, he is twice in jeopardy and should be acquited." 22 C.J.S., Criminal Law, s. 259, p. 678. Accord: 15 Am. Jur., Criminal Law, s. 387, p. 62; Ann. Cas. 1915D, 886; 12 Cyc., Criminal Law, p. 272.

In *Bell v. State*, 30 S.E. 294 (Ga. 1898), a plea of former jeopardy was sustained. Defendant was put on trial in the City Court of Atlanta on a charge of assault and battery on a female. During the course of the trial a juror was withdrawn and a mistrial ordered, and defendant was held in custody to answer in Superior Court on a charge of assault with intent to commit rape. The City Court had no authority to hold preliminary hearings and to determine probable cause. Defendant pleaded former jeopardy. The appellate court declared: "Where a person has been put in legal jeopardy of a conviction of an offense which is a necessary element in, and constitutes an essential part of, another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded on the same act." A similar result was reached in an analogous case in Alabama. It involved the same legal and factual circumstances. *State v. Blevins*, 32 S. 637 (Ala. 1902). In *People v. Hunckeler, supra,* defendant was put on trial for murder and pleaded former jeopardy. He had previously been indicted for manslaughter, and at his trial on this indictment the court, without his consent, ordered a mistrial because it was of the opinion that the evidence showed defendant was guilty of murder. Defendant was thereafter indicted for murder for the same killing. California had a statute purporting to authorize the judge to discharge the jury and hold defendant for a higher offense. Notwithstanding this statute, the appellate court held that defendant was "twice put in jeopardy for the same offense" and entitled to discharge. It was held that the statute did not apply in situations where the first offense was a lesser degree of the second. A New York case involved identical circumstances, both as to law and facts. *People v. Karney, supra.* The court sustained the plea of double jeopardy, and declared unconstitutional the statute which purported to authorize a judge to order a mistrial in such situations. In condeming the statute and action under it, the opinion says:

"The occurrence which the statute (s. 400) anticipates embraces a deadly motive, viz: to provide greater punishment for the accused." For other decisions in accord with the foregoing, see: *People v. Ng Sam Chung*, 29 P. 642 (Cal.); *Ingram v. State*, 52 S.E. 759 (Ga.); *Application of Williams*, 333 P. 2d 280 (Ariz.); *Griffin v. State*, 113 S.E. 66 (Ga.); *State v. Noel*, 268 N.W. 654 (N.D.).

In states having rule that there is no jeopardy until after conviction or acquittal, the holdings are otherwise. *State v. Buente, supra; Larson v. State*, 140 N.W. 176 (Neb.). There is no double jeopardy where the court at the first trial has no jurisdiction. *Thompson v. State*, 6 Neb. 102.

The reason for mistrial in this case does not fall within the category "necessity for doing justice," as this phrase is understood in the administration of law in this jurisdiction.

The plea of former jeopardy should have been sustained. The court below will vacate the judgment, set aside the verdict, and discharge the defendant.

The State, if the facts justify and if so advised, may indict and try defendant for nonburglarious breaking and entering of a dwelling house with felonious intent. G.S. 14-54.

The judgment below is
Reversed.

PARKER, J., dissents.

SHARP, J., took no part in the consideration or decision of this case.