State v. Lamb

STATE OF NORTH CAROLINA v. CHARLES ANDREW LAMB, JR.

No. 7822SC747

(Filed 2 January 1979)

1. **Constitutional Law § 50 — speedy trial — exclusion of testimony — harmless error**

    In a hearing on a motion to dismiss for lack of a speedy trial, defendant was not prejudiced by the exclusion of a witness's testimony as to the number of criminal cases pending in the county on certain dates where the record from which the witness would have testified was accepted into evidence.

2. **Constitutional Law § 50 — speedy trial — delay between first and second trials — neglect by State — absence of prejudice**

    Defendant's right to a speedy trial was not denied by a delay of over 19 months between the time defendant was granted a new trial by the Court of Appeals and his retrial, although the length of the delay and testimony by the clerk of court that a number of more recent cases were calendared ahead of defendant's case showed neglect on the part of the State, where defendant was free on bond during the period between his first and second trials, the delay caused defendant no excessive anxiety or concern, the delay did not impair defendant's defense, and defendant at no time made a demand for a trial of the case.

3. **Criminal Law § 89.10 — impeachment — specific acts of misconduct — absence of prejudice**

    In this prosecution for discharging a firearm into an occupied dwelling, testimony by an occupant of the dwelling that a defense witness pointed a gun at her later in the same morning as the incident in question, if incompetent as an attempt to impeach the witness by evidence of a specific act of misconduct, was not prejudicial to defendant since the witness testified that he, not defendant, shot into the dwelling, and the occupant's testimony tended to support rather than impeach his testimony.

4. **Criminal Law § 119 — request for instructions — oral request not sufficient**

    The trial court did not err in failing to give an instruction on prior inconsistent statements as orally requested by defendant, since the allowance of re-

quests for special instructions not submitted in writing before the charge begins rests in the judge's discretion. G.S. 1-181.

APPEAL by defendant from *Mills, Judge.* Judgment entered 21 March 1978 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 29 November 1978.

Van Byars swore out a complaint against the defendant for discharging a shotgun into Byars' house on 24 June 1975 while it was occupied. Defendant was convicted and judgment was entered on 30 October 1975; on 21 July 1976 this Court granted defendant a new trial. *State v. Lamb,* 30 N.C. App. 255, 226 S.E. 2d 680 (1976). The second trial was not begun until 20 March 1978, at which time defendant moved to dismiss on the ground that he had been denied a speedy trial. A hearing was held on the motion and the motion was denied.

It was stipulated that at the time of the shooting Mr. & Mrs. Byars and their children were occupying the Byars house. The State presented evidence that on the night of 24 June 1975 the Byars family was asleep when something awakened Mrs. Byars. She went to the window and saw defendant standing outside with a shotgun in his hand. She testified that she had known defendant 20 years as he was her husband's nephew, and that she saw him about every day. She called for her husband and defendant ran. About that time a police car pulled up in the driveway; Mrs. Byars told the officer that defendant had gone running out of the driveway. At that time she did not know that there had been any shooting. The police examined the house and found holes in the window screen and the inside wall. They recovered some shotgun pellets. Thirty minutes to an hour after the police left, defendant and Jim Lamb and another man pulled up in a car, and defendant called "I shot through your house. Come on out here and I will shoot you now."

Deputy Mullis testified that he talked to Mrs. Byars after the shooting and that she described the clothing the man was wearing, but she could not swear that defendant was the man. He said he asked her two, three or four times if she could identify the person she saw running up the road, and she did not say that that person was the defendant, although she said it looked like him.

The defense called Jim Lamb, who testified that it was he who shot into the Byars house. He did it because of something Mr. Byars said when defendant's father was shot. He was not present at any later conversation between defendant and Mr. Byars.

Sergeant Hampton of the Lexington Police Department testified that in the morning after the shooting Mrs. Byars came to the police station to see about obtaining a warrant. She said the man she saw outside her house had something in his hand but she couldn't tell what it was, and that the man looked like the defendant, but she could not be sure.

Mrs. Byars, recalled by the State, testified that she did not have a conversation with Officer Hampton on 24 June, and that she had gone to the police station that day not about the defendant, but to swear out a warrant against Jim Lamb for pointing a gun at her and her son later on the morning of the shooting.

Defendant was found guilty and sentenced to four to six years. He appeals.

*Attorney General Edmisten, by Assistant Attorney General James E. Magner, Jr., for the State.*

*Barnes & Grimes, by Jerry B. Grimes, for defendant appellant.*

ARNOLD, Judge.

I.

[1] Defendant first contends that the court erred in excluding testimony of Rudy Puryear, manager of the Systems Division in the Administrative Office of the Courts, at the hearing on the motion to dismiss. Defendant wished to have Puryear testify to the number of criminal cases pending in Davidson County Superior Court on 1 January 1977 and 1 January 1978, but the State objected on the ground the testimony was hearsay, since Puryear had no first-hand knowledge of the information. We find that defendant was not prejudiced by the exclusion of the testimony, since the record from which Puryear would have testified was accepted into evidence, and Hugh Shepherd, Clerk of the Superior Court of Davidson County, was permitted to testify at length

about the backlog of criminal cases pending in Davidson County. There is no showing that any information that would have been beneficial to defendant was excluded.

## II.

[2]  Defendant next argues that his motion to dismiss for failure to provide a speedy trial should have been granted. The defendant was granted a new trial by this Court in an opinion received by the Clerk of Superior Court of Davidson County on 12 August 1976. The case was not called for trial until 20 March 1978, 19 months and 8 days later.

In *State v. Tindall*, 294 N.C. 689, 242 S.E. 2d 806 (1978), there are set out four interrelated factors which are of primary significance in determining whether a defendant has been denied his right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the extent to which the defendant has asserted his right, and (4) the prejudice to defendant by the delay. None of the factors alone is determinative; they must be considered together.

The delay here was a long one, and such delays are certainly disapproved. See *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965). However, under the law existing at the time of this trial the circumstances of each case must be examined to determine whether a speedy trial has been denied. Moreover, the burden is on the accused to show that the delay was caused by the neglect or wilfulness of the prosecution. *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978); *State v. Hill*, 287 N.C. 207, 214 S.E. 2d 67 (1975); *State v. Hice*, 34 N.C. App. 468, 238 S.E. 2d 619 (1977).

We believe that the lengthy delay itself, coupled with the testimony of the Clerk of Court that a number of more recent cases were calendared ahead of defendant's, gives rise to a reasonable inference of neglect on the part of the State, but the defense still must show some prejudice by the delay. The trial court found that the defendant has been free on bond during the entire period between the first and second trials, that the delay has not caused the defendant any excessive anxiety or concern, and that the delay has not impaired his defense. The defendant has not shown us that any of these findings is incorrect. Finally, it is stipulated that defendant at no time made a demand for a trial of this action. While failure to demand a speedy trial does

not waive that right, *State v. Hill, supra*, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, 407 U.S. 514, 532, 33 L.Ed. 2d 101, 118, 92 S.Ct. 2182, 2193 (1972). Considering all factors, including the conduct of both the defendant and the prosecution, we find that defendant's right to a speedy trial was not denied.

## III.

[3]   The defendant contends that the trial court erred in admitting the portion of Mrs. Byars' testimony explaining why she came to the police station the morning after the shooting. The challenged portion of the testimony was as follows:

MR. FULLER: Why did you come to the Sheriff's Department that morning of June 24, 1975?

A. To take out a warrant for Jim Lamb.

    *    *    *    *

MR. FULLER: Did you in fact take a warrant out against Jim Lamb?

A. I did.

    *    *    *    *

MR. FULLER: For what?

A. Pointing a gun at me and my son.

MR. FULLER: To your knowledge, was Jim Lamb in fact convicted of pointing a gun at you and your son?

    *    *    *    *

A. He plead guilty to it.

MR. FULLER: What?

A. He plead guilty to it.

    *    *    *    *

MR. FULLER: You say he pleaded guilty?

A. Yes, sir.

MR. FULLER: When did this incident involving Jim Lamb pointing a gun take place?

\*　　\*　　\*　　\*

A. After Andy and them left from up at the store my husband told me to come down here and see what could be done and come tell me. When I got in the car to leave, my son was with me. Jim Lamb and Calvin and Jim's mother come running out —

\*　　\*　　\*　　\*

A. Jim came running out in the driveway, said "You ain't going nowhere."

Defendant argues that this testimony was inadmissible as an attempt to impeach defense witness Jim Lamb by evidence of a specific act of misconduct. While we agree that the admission of this testimony may have been in error, we cannot find that it was prejudicial error. Jim Lamb testified for the defense that it was he who shot into the Byars house. We believe that testimony that he later in the morning pointed a gun at Mrs. Byars and her son would have been unlikely to detract from or impeach his testimony, but rather would tend to support the defendant's theory that it was Jim Lamb who did the shooting.

## IV.

[4] The defendant contends that the trial court erred in failing to charge the jury with regard to prior inconsistent statements of Mrs. Byars. At the close of his charge to the jury the judge asked "Anything else?" and defense counsel approached the bench and requested instructions on the prior inconsistent statements. The request was refused. Defense counsel then offered to draw up the special instruction and the court answered "All right," but apparently this was never done. G.S. 1-181 provides that requests for special instructions must be in writing and must be submitted to the judge before his charge to the jury is begun. Requests submitted at any other time are considered at the judge's discretion. Since defense counsel did not submit the requested instruction either before the jury charge, or after the charge when the judge apparently gave him permission to do so, defendant cannot now complain that no instruction on the subject was given. We note, in

addition, that the judge in summarizing the evidence did bring to the jury's attention the inconsistencies in Mrs. Byars' statements.

## V.

We have examined defendant's other assignments of error and find that they are without merit.

No error.

Judges HEDRICK and VAUGHN concur.