State v. Raynor

STATE OF NORTH CAROLINA v. FREDDIE RAYNOR

No. 7915SC820

(Filed 19 February 1980)

1. Criminal Law § 128.2— snowfall—illness of juror—mistrial properly entered

The trial court did not abuse its discretion in declaring a mistrial and ordering a retrial of defendant's case at the earliest convenient session where the session of court at which defendant's case was called was interrupted by two snowfalls which prevented jurors from getting to the courthouse and where one juror became ill during the session at which defendant's case was called and was advised by her doctor to stay at home.

2. Criminal Law § 91.7— absence of State's witness—continuance proper

Defendant was not prejudiced by the trial court's granting of the State's motion to continue, since the State sought the delay in order to have an FBI agent, who was out of the State at the time defendant's case was called, to testify for the State concerning his examination of the evidence and to give the agent time to examine hair samples from defendant and the victim; defendant did not testify or call any witnesses in his behalf, so the delay would not affect the memories of witnesses; and defendant did not request that his case be placed on the docket for trial, nor did he make a motion for speedy trial.

3. Burglary and Unlawful Breakings § 5; Rape § 18.2— first degree burglary—assault with intent to commit rape—sufficiency of evidence

Evidence was sufficient for the jury in a prosecution for first degree burglary and assault with intent to commit rape where such evidence tended to show that the victim was assaulted in her bedroom by a male; the victim struggled with the assailant, scratching his private parts; the victim formed an idea of the assailant's appearance on the basis of what his face felt like; the victim selected defendant's picture as that of her assailant from a group of pictures shown to her; fingerprints from one of the victim's window screens matched those of defendant; and one day after the crimes charged, an officer observed scratches on defendant's private parts.

4. Criminal Law § 122.1— additional jury instructions—jury's questions answered

Where the jury asked the judge a question which he answered, the judge asked the foreman if that answered his question and if he had any other question, and the foreman responded in the negative, there was no merit to defendant's contention that the foreman was asked two questions and gave only one answer and that the judge therefore did not answer the question asked by the jury.

APPEAL by defendant from *McKinnon, Judge.* Judgment entered 12 April 1979 in Superior Court, ORANGE County. Heard in the Court of Appeals 30 January 1980.

State v. Raynor

On 21 November 1978, defendant was properly indicted for the offenses of assault with intent to commit rape and first-degree burglary. On 5 February 1979, the trial on said charges began. After the jury had heard all the evidence and the closing arguments, the jury began its deliberations on Thursday (8 February 1979). On Friday, the court declared a mistrial due to the illness of a juror and the accumulation of snow. The court noted in its order that "it is impossible for the trial to proceed in conformity with law in that the delay of the trial and further jury deliberations until Monday would not be fair either to the jurors or to the parties to the action." Defendant had unsuccessfully moved that "because of the length of time the action had been pending that the charges against the defendant be dismissed and in the alternative moved that the term of Court be extended so that the trial could be completed next week." The cases were then calendared for 13 March 1979. On 12 March 1979, the State moved for a continuance due to the unavailability of an F.B.I. agent who had planned to testify for the State. The motion was allowed.

At the trial of the case on 9 April 1979, Elizabeth Boughman testified: that on 17 September 1978, she was living at 116 Basnight Lane, Chapel Hill, with her roommate; that she went to bed around midnight; that her roommate was away; that the doors were locked; that later in the night, someone entered her bedroom and placed his hand over her mouth; that the man told her he would not hurt or rape her, but ordered her to take her clothes off; that after she had taken her gown off, he got on top of her; that she began to struggle; that the man hit her on her face and tried to choke her; and that she scratched his testicles and scrotum with her fingernails. Ms. Boughman was able to get the man off her and ran to her neighbor's house. Ms. Boughman further testified that she was able to feel the man's face during the struggle and that from her experience in studying art from a blind person's perspective, she was able to get an idea of his face. On 18 September 1978, Ms. Boughman selected defendant's picture from a group of ten pictures, because the man in the picture had close-cropped hair, a wide nose, and facial hair similar to that of the man who assaulted her. (Defendant's picture was taken with his consent on 18 September 1978.) Ms. Boughman admitted that she could not definitely identify defendant as being the per-

son, but that his features were very consistent with the features of the man she observed and whose face she felt.

Police Officer Pendergrass testified that based upon the description of the man given by Ms. Boughman, he determined that defendant might be a possible suspect. Defendant voluntarily talked to police officers and consented to be fingerprinted. Defendant denied being on Basnight Lane. On 13 March 1979 while defendant was in jail, he voluntarily allowed Officer Pendergrass to remove some of his pubic hair for analysis.

Detective Truelove testified that on 18 September 1978, latent fingerprints were lifted from one of the window screens at Ms. Boughman's residence. Truelove removed some hair from her bed. Samples were collected from underneath Ms. Boughman's fingernails. All of these samples were sent to the F.B.I. Investigation Laboratory in Washington, D. C. on 22 February 1979.

Laboratory experts from the F.B.I. testified that the debris from under the fingernails of Ms. Boughman contained human tissue that could have originated from a person of any race or sex and that the hairs taken from Ms. Boughman's bed were characteristically similar to the ones taken from defendant. Evidence was presented that on the night in question, the screen by the back porch of Ms. Boughman's residence was not "hooked shut," because it was stuck by paint.

An expert in the field of fingerprints comparison and identification testified that the latent prints from the screen and the prints taken from defendant matched and that on 18 September 1978, he observed scratches or lacerations on defendant's scrotum and testicles. He admitted that the fingerprints found on the screen could have remained there for a year or more.

Defendant did not offer any evidence. Defendant was convicted of non-felonious breaking and entering and assault with intent to commit rape. From the imposition of a prison sentence, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan and Special Deputy Attorney General Myron C. Banks, for the State.*

*William F. Larimer, for defendant appellant.*

ERWIN, Judge.

Defendant presents five arguments for our determination:

"I. That the trial court erred in denying the appellant's motion and by declaring a mistrial following the first trial of this matter in February of 1979

II. That the trial court erred in granting the State's motion for a continuance [on 12 March 1979]

III. That the trial court erred in denying the appellant's motion for dismissal at the end of the State's evidence

IV. That the trial court erred in its charge to the jury

V. That the trial court erred by not directly answering the question posed to it by the jurors deliberating this cause"

We find no prejudicial error in the trial of defendant.

### Mistrial February 1979

[1]  In this assignment of error, we note that defendant did not move or request to have his cases tried as soon as possible, nor does the record show that he objected to delay in his trial from November 1978 to February 1979. We also note that defendant did not plead at the second trial that jeopardy applied in this case.

We hold that this case is controlled by *State v. Birckhead,* 256 N.C. 494, 506, 124 S.E. 2d 838, 848 (1962), wherein our Supreme Court held:

"We conclude that the trial judge in cases less than capital may, in the exercise of sound discretion, order a mistrial before verdict, without the consent of defendant, for physical necessity such as the incapacitating illness of judge, juror or material witness, and for 'necessity of doing justice.' He need not support his order by findings of fact. His order is not reviewable except for gross abuse of discretion, and the burden is upon defendant to show such abuse. But the discretion of the trial judge is not unlimited, and if it be affirmatively shown that no physical necessity or 'necessity for doing justice' existed, the order of mistrial will be deemed

arbitrary and beyond the scope of the court's discretion. Where a court acts arbitrarily and beyond the bounds of its discretion under the semblance of exercising discretion, such action by the court amounts to a gross abuse of discretion."

This principle of law, as stated in *State v. Birckhead, supra,* has been followed by our Supreme Court in the following cases: *State v. Small,* 293 N.C. 646, 239 S.E. 2d 429 (1977); *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972); *State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971); *State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599 (1966); *State v. Pfeifer,* 266 N.C. 790, 147 S.E. 2d 190 (1966). *State v. Birckhead, supra,* has been followed by this Court in *State v. McGhee,* 16 N.C. App. 702, 193 S.E. 2d 446 (1972), *cert. denied,* 282 N.C. 674, 194 S.E. 2d 154 (1973); *State v. Anderson,* 9 N.C. App. 146, 175 S.E. 2d 729 (1970); *State v. Preston,* 9 N.C. App. 71, 175 S.E. 2d 705 (1970).

The order entered by Judge McKinnon may be reversed by this Court only if gross abuse of discretion appears from the record. *State v. Guice,* 201 N.C. 761, 161 S.E. 533 (1931). The record before us shows that defendant did not contest the mistrial order entered or any matter therein; that on Tuesday afternoon, there was a snowfall of five inches, and court did not convene on Wednesday because of weather conditions; but that court convened on Thursday and recessed until Friday morning at 9:30 a.m. Again, snow began to fall about 7:00 a.m. The court advised the sheriff to tell any jurors who called that they should proceed to court and be present by 9:30 a.m. By 10:00 a.m., seven jurors were present. The court was advised that a changed weather report indicated that the snow accumulation would be from two to three inches and that travel would be hazardous for the remainder of the day. In addition, the following event occurred:

"[T]hat one juror, Mrs. Ballew, had reported that she was ill and believed that she had the flu and that other jurors were calling to know whether they should come in view of a continuing snow and hazardous conditions of the road. That the Court directed the Clerk to have Mrs. Ballew consult a doctor by telephone and to report as to his diagnosis and instruction. Mrs. Ballew has reported that she has consulted a

State v. Raynor

Dr. Jones, that he has diagnosed her situation as intestional flu and advised that she stay at home."

The court's order provided the following, *inter alia*:

"The Court finds the foregoing statements to be facts and upon these facts is of the opinion that it is impossible for the trial to proceed in conformity with law in that the delay of the trial and further jury deliberations until Monday would not be fair either to the jurors or to the parties to the action, that the length of the trial was such that it may reasonably be tried again in the near future and without injury to the rights of the State or of the defendant, and the Court is of the opinion that the interest of justice will best be served by a mistrial at this time and a retrial of the action at the earliest convenient session.

IT IS, THEREFORE, ORDERED that by reason of the illness of the juror, Mrs. Ballew, she is withdrawn as a juror and a mistrial of the action is declared."

From this record, we cannot find abuse of discretion on the part of Judge McKinnon. He was faced with crucial problems beyond his control, and his response was in the best interest of justice for all parties. We overrule this assignment of error as being without merit.

### State's Motion to Continue on 12 March 1979

[2] Defendant contends the granting of the State's motion to continue after the court's order directing a mistrial denied him a right to a speedy trial and that he was prejudiced by the delay, not only in terms of having new evidence introduced against him but also in terms of the effect of further delay on the memories of witnesses and on his own right to a final determination of the charges against him.

First, we note that defendant did not testify nor did he call any witnesses on his behalf. Therefore, the effect of the memories of witnesses would not apply to him. The record does not include a written motion by the State to continue the cases nor does it contain defendant's answer to such motion. Without these documents, we can only review the order entered by the trial judge. We also note that on 12 March 1979, defendant had not re-

quested that his trial be placed on the docket for trial nor had he made a motion for a speedy trial.

The court found, *inter alia:*

> "3. F.B.I. Agent Frier, who has made an examination of evidence in this case and who would be a witness for the State in the trial of this case, is from out of state, is to be testifying in the State of Utah this week, and has advised the District Attorney that he is not available for testimony in the trial of this case this week, and

> 4. That Agent Frier advised the State on March 10, 1979, that if the State presented him with sample hair from the victim and the defendant he could make further comparisons which may be substantial in the determination of the guilt or innocence of the Defendant (the hair has not yet been taken from the defendant, because he declined to make it available to the State voluntarily).

> The Court therefore concludes that for the reasons set forth above, the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial."

The ruling on a motion for a continuance is within the discretion of the trial court. *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978). The record does not show that any acts on the part of the State were purposefully used to delay defendant's trial. This case does not fall within the holding in the case of *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978), wherein defendant made several requests for a trial of the charges against him, and those requests were denied. This Court, in *State v. Lamb*, 39 N.C. App. 334, 337-38, 249 S.E. 2d 887, 890, *appeal dismissed*, 296 N.C. 738, 254 S.E. 2d 180 (1979), stated: "While failure to demand a speedy trial does not waive that right, *State v. Hill, supra* [287 N.C. 207, 214 S.E. 2d 67 (1975)], 'failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.'" After considering and balancing the factors: (1) the length of delay, (2) the reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to defendant

resulting from the delay, we find no error. *State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976).

## Motion for Judgment as of Nonsuit

[3]   The trial court denied defendant's motion, which we will treat as a motion for judgment in the case of nonsuit. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). Upon defendant's motion, as here, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. Where there is sufficient evidence, direct or circumstantial, by which the jury could find the defendant had committed the offense charged, then the motion should be denied. *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977); 4 Strong's N.C. Index 3d, Criminal Law, § 106, p. 547. Suffice it to say that in applying the above rule to the case *sub judice*, the evidence was ample to submit the cases to the jury and for the jury to return a verdict thereon. We find no error.

## Charge of the Court

[4]   After the jurors had deliberated, they returned to the courtroom to ask the judge a question. After the answer was given by the court, the court asked the jury the following questions: "Does that answer your question? Any other question at this time?" The foreman answered, "No, sir." The foreman was given a clear tablet upon his request. The jury returned to its room and later returned a verdict in open court.

Defendant contends that the foreman was asked two questions by the court, and he gave only one answer. From this, defendant concludes that the trial judge did not answer the question asked by the jury, that is, the answer applied to the first question asked by the court. We are unable to follow this reasoning. When the jury needed to ask a question, it did. It follows that if it wanted to follow up on the first question, it would have. The opportunity was present. We cannot see how this was prejudicial to defendant. Defendant's counsel did not make any statement or call the matter to the attention of the court. This contention is without merit.

From our study of the entire charge, we find it to be clear, the law was properly applied to the evidence, and there were no conflicts in it. Again, we find no prejudicial error. 4 Strong's N.C. Index 3d, Criminal Law, § 111, p. 564.

## Conclusion

In the trial of defendant, we find no prejudicial error.

No error.

Judges MARTIN (Robert M.) and WELLS concur.